**Charles C. JOHNSTON and Gordon P. Ramsey, as Trustees of the AMEC Liquidating Trust, Plaintiffs–Appellants,**

v.

**IVAC CORPORATION,
Defendant–Appellee.**

**No. 88–1639.**

United States Court of Appeals,
Federal Circuit.

Sept. 27, 1989.

---

Daniel R. Shulman, of Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., argued for plaintiffs-appellants. With him on the brief were Nancy A. Quattlebaum, of Gray, Plant, Mooty, Mooty & Bennett, Joseph M. Alioto, of Alioto & Alioto, San Francisco, Cal.; Jerry Cohen, of Cohen & Burg, Boston, Massachusetts, and Joseph S. Iandiorio, of Waltham, Mass.

Richard A. Bardin, of Fulwider Patton Lee & Utecht, Los Angeles, Cal., argued for defendant-appellee. Of counsel was Craig B. Bailey, of Fulwider Patton Lee & Utecht.

Before NIES and BISSELL Circuit Judges, and BALDWIN, Senior Circuit Judge.

NIES, Circuit Judge.

Charles C. Johnston and Gordon P. Ramsey, trustees of the AMEC Liquidating Trust (AMEC), appeal the final decision of the United States District Court for the Southern District of California, No. 87–0703–GT(M) (Thompson, J.) entered on July 5, 1988, granting IVAC Corporation's (IVAC) motion for summary judgment on the ground that IVAC's electronic medical thermometers employing a disposable probe cover do not infringe AMEC's United States Patent No. 4,112,762 ('762). We affirm.

## BACKGROUND

The subject matter of this suit relates particularly to electronic medical thermometers having disposable covers for the thermometer probe. Robert Turner developed and obtained a patent, now owned by AMEC, directed to the mechanism for attaching a removable probe cover to the probe. It is important that, in use, the cover be securely fastened to the probe. Turner developed a design in which a section of the metal probe was deformed and flared out to grip the probe cover from the inside. The full text of the claims 1 and 2 in issue are set forth below.[1]

In June 1986, AMEC brought suit against IVAC, claiming that the IVAC Model 880 (oral) and Model 882 (rectal) electronic medical thermometers infringed claims 1 and 2 of the '762 patent when used in combination with the IVAC model P850 probe cover. Nearly two years later and with discovery complete, IVAC moved for summary judgment on the grounds that (1) the patent was invalid under 35 U.S.C. § 102(b) due to an "on sale" bar; and (2) the IVAC models 880/882 did not infringe, i.e., did not fall within the scope of the asserted claims. The district court granted summary judgment on the ground of noninfringement. The propriety of granting IVAC's motion is the sole issue in this appeal.

## OPINION

### I

As in other cases, the grant of summary judgment under Fed.R.Civ.P. 56,[2] is appro-

---

**1.** 1. In combination, a probe member and a disposable probe cover attachable thereto, said probe member having a handle and an elongated generally cylindrical metallic probe element depending outwardly therefrom, said probe element being deformed to define at least one integral, substantially rigid salient section flaring outwardly from a longitudinal axis of said probe element and towards said handle portion, said section terminating in a sharp edge, said probe cover being composed of a material deformable and penetrable relatively to the metallic material of said section, said handle portion including means for slidably inserting said probe element into said probe cover, said means for inserting forcing said probe cover to deform over said salient section and causing said sharp edge to inscribe itself fixedly into said probe

cover, whereby said probe cover is rigidly mounted onto said probe member.

2. Apparatus as described in claim 1 wherein said handle portion further includes plunger means, slidably movable with respect to said means for inserting, for exerting removal force against said probe cover and against the sharp edge of said section, and for forcing said sharp edge to cut its way free of said probe cover.

**2.** Fed.R.Civ.P. 56(c) provides in pertinent part: The judgment sought [on a motion for summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

priate in a patent case where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 221 USPQ 561 (Fed.Cir.1984) (summary judgment on issue of validity); *Townsend Eng'g Co. v. HiTec Co.*, 829 F.2d 1086, 1089, 4 USPQ2d 1136, 1138 (Fed.Cir. 1987) (summary judgment on issue of infringement). Summary judgment may be granted in favor of a defendant on an ultimate issue of fact where the defendant carries its burden of "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). As further stated in *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Thus, the motion of an accused infringer for judgment on the ground of non-infringement of a patent may be granted where the patentee's proof is deficient in meeting an essential part of the legal standard for infringement. *Townsend Eng'g*, 829 F.2d at 1089, 4 USPQ2d at 1138; *Chemical Eng'g v. Essef Indus., Inc.*, 795 F.2d 1565, 1571, 230 USPQ 385, 389 (Fed. Cir.1986); *Brenner v. United States*, 773 F.2d 306, 307, 227 USPQ 159, 160 (Fed.Cir. 1985); *Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 257, 225 USPQ 240, 241 (Fed.Cir.1985); *Prodyne Enterprises, Inc. v. Julie Pomer-*

*antz, Inc.*, 743 F.2d 1581, 1583, 223 USPQ 477, 478 (Fed.Cir.1984).

That the case is thereby taken from the jury is in no sense a denial of AMEC's right to a trial, *Avia Group Int'l v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560, 7 USPQ2d 1548, 1550 (Fed.Cir.1988). Indeed, summary judgment can only lie where no dispute with respect to a material fact is "genuine." As the Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), "[A dispute is genuine] if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Avia Group Int'l*, 853 F.2d at 1560, 7 USPQ2d at 1550.

We find AMEC's arguments that summary judgment improperly deprived it of its right to a jury trial wholly unpersuasive on the record of this case. IVAC persuaded the district court to grant judgment in its favor by "pointing out" the absence of evidence showing that its devices met the test for infringement, either literally or under the doctrine of equivalents. As explained herein, we as well conclude that the evidence submitted by AMEC raised no genuine issue of material fact on the issue of infringement and that IVAC was entitled to judgment as a matter of law.

## II

To establish infringement of a patent, every limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent.[3] *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1259, 9 USPQ2d 1962, 1967 (Fed.Cir.1989); *Julien v. Zeringue*, 864 F.2d 1569, 1571, 9 USPQ2d, 1552, 1553 (Fed.Cir.1989); *ZMI v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1582, 6 USPQ2d 1557, 1562 (Fed.Cir. 1988); *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 935, 4 USPQ2d 1737, 1740 (Fed.Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1226, 99 L.Ed.2d 426

---

**3.** Sometimes referred to as the All Elements Rule. *See* 4 D. Chisum, *Patents,* § 18.03[4] (1986). A more precise name would be the All Limitations Rule. *See Corning Glass,* 868 F.2d at 1259, 9 USPQ2d at 1968; *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.,* 822 F.2d 1528, 1533 n. 9, 3 USPQ2d 1321, 1325 n. 9 (Fed.Cir.1987).

(1988) (in banc); *Lemelson v. United States,* 752 F.2d 1538, 1551, 224 USPQ 526, 533 (Fed.Cir.1985). Thus, the accused infringer, IVAC, is entitled to summary judgment, on the ground of non-infringement, by pointing out that the patentee failed to put forth evidence to support a finding that a limitation of the asserted claim was met by the structure in the accused devices.

The dispute here centers on the following claim limitations:

(a) said probe element being *deformed* to define at least one *integral,* substantially rigid *salient section* flaring outwardly from a longitudinal axis of said probe element and towards said handle portion, *said section terminating in a sharp edge*

and

(b) said means for inserting forcing said probe cover to deform over said salient section and causing *said sharp edge to inscribe itself fixedly into said probe cover.* (emphasis added)

The district court held that there was no genuine issue of fact that the emphasized limitations were not met exactly or by equivalents. AMEC asserts that the district court resolved a disputed issue of fact in making that decision.

### A. *Literal Infringement*

The part of the accused IVAC devices which AMEC asserts meets the limitations of a "deformed ... integral ... salient section ... terminating in a sharp edge" which is forced "to inscribe itself fixedly into said probe cover" is a separately formed metal retaining ring affixed to the probe. IVAC provided affidavit and documentary evidence that this separately formed ring was intentionally machined free of any sharp edge so as to facilitate removal of the cover and that the ring was designed and constructed to perform a friction or interference fit. To raise an evidentiary issue that these limitations were met, AMEC submitted affidavits of the inventor Turner and an attorney, Joseph S. Iandiorio, who averred that the IVAC probe assemblies were infringements.

The Iandiorio affidavit was discounted by the district court because it referenced a model of an IVAC device which was not in suit. On appeal, AMEC attempts to rectify the apparent irrelevance of the affidavit. We need not resolve the appropriateness of AMEC's efforts. The Iandiorio affidavit contains only the following statement on infringement:

More particularly, I have reviewed the probe cover grip mechanism of the IVAC thermometer with respect to the patent, and I find that it infringes at least claims 1, 2, 3, 4, 5 and 6 of the patent.

This conclusory statement is wholly insufficient to raise a genuine evidentiary dispute for a jury. In affirming summary judgment of non-infringement, this court held in *Chemical Engineering,* 795 F.2d at 1571, 230 USPQ at 390:

General assertions of fact issues, general denials, and conclusory statements are insufficient to shoulder the non-movant's burden. *Cf. Hodosh v. Block Drug Co., Inc.,* 786 F.2d 1136, 1141, 229 USPQ 182, 186 (Fed.Cir.1986).

At oral argument, AMEC's counsel asserted that the similarity between the patented and accused devices themselves, examples of which are in evidence, raises an evidentiary question in this case. In light of IVAC's evidence that limitations of the claims could not be found in its devices at all, AMEC had the burden of coming forward with sufficient countering evidence. Mere assertion of similarity in the accused and patented devices is insufficient to create a genuine factual issue.

AMEC points finally to the Turner affidavit. Turner described his examination of an accused IVAC probe and stated that "the edge of the retaining ring become[s] fixed or inscribed into the probe cover." This conclusion apparently resulted from his examination "of the inside of the P850 probe cover" using a 30x microscope and finding "that the sharp edge of the retaining ring inscribed scratches into the material on the inside of the probe cover." Although no proof was offered that the scratches were, in fact, caused by the retaining ring, for purposes of this motion we will draw the favorable inference that they were. *See Chemical Eng'g,* 795 F.2d at 1571; 230 USPQ at 389.

The district court found the Turner affidavit was not probative on infringement, *inter alia,* because it depended on Turner's opinion about the legal meaning of words and phrases in the claims of the '762 patent. From the arguments made during prosecution, the term "inscribe", the court concluded, "excluded penetration that was merely incidental to a friction fit." AMEC had argued to the PTO that "inscribing" required "dig[ging] into the probe cover surface", and that the probe "impales" a sharp edge into the cover, piercing it "with something like a stake." That argument was necessary to distinguish the prior art Sato patent which disclosed a friction fit between the probe and the probe cover. Specifically, AMEC argued that the incidental "piercing" of the cover in the Sato device differed from the impalement operation in the subject invention.

Given this interpretation, AMEC's evidence of microscopic scratches on the IVAC friction fit cover raises no genuine issue that the ring on the IVAC devices "inscribes itself fixedly into the probe cover." This is not a matter of prosecution history estopping a patentee from asserting that a different function, e.g., a friction fit, is equivalent to the inscription fit required by the claim. It simply follows from the interpretation given the limitation "to inscribe itself." Properly interpreted, that limitation is not literally met.

■ AMEC argues that it should have been left to the jury to interpret the claim and to decide whether the IVAC probe assembly met these limitations. Where, as here, no underlying fact issue must be resolved, claim interpretation is a question of law. Thus, a mere dispute over the meaning of a term does not itself create an issue of fact. This is true even where the meaning cannot be determined without resort to the specification, the prosecution history or other extrinsic evidence provided upon consideration of the entirety of such evidence the court concludes that there is no genuine underlying issue of material fact. *Howes v. Medical Components, Inc.,* 814 F.2d 638, 643, 2 USPQ2d 1271, 1274 (Fed.

Cir.1987); *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 866–67, 228 USPQ 90, 93 (Fed.Cir.1985); *Molinaro v. Fannon/Courier Corp.,* 745 F.2d 651, 654, 223 USPQ 706, 707 (Fed.Cir.1984); *SSIH Equip. S.A. v. United States Int'l Trade Comm'n,* 718 F.2d 365, 376, 218 USPQ 678, 688 (Fed.Cir.1983). As held in *Howes,* 814 F.2d at 643, 2 USPQ2d at 1274, "We note that claim interpretation in light of such evidence remains a question of law, *see, e.g., Fromson v. Advance Offset Plate, Inc.,* 720 F.2d 1565, 1569–71, 219 USPQ 1137, 1140–[42] (Fed.Cir.1983)...."

■ In ruling on this issue we have taken into consideration the statement in *Perini America, Inc. v. Paper Converting Machine Co.,* 832 F.2d 581, 584, 4 USPQ2d 1621, 1624 (Fed.Cir.1987)[4] that "[i]f the meaning of terms in the claim ... is disputed, that dispute must be resolved as a question of fact...." Where conflicting statements such as these appear in our precedent, the panel is obligated to review the cases and reconcile or explain the statements, if possible. If not reconcilable and if not merely conflicting dicta, the panel is obligated to follow the earlier case law which is the binding precedent. *Newell Cos., Inc. v. Kenney Mfg. Co.,* 864 F.2d 757, 765, 9 USPQ2d 1417, 1423 (Fed.Cir. 1988). Alternatively, a panel may seek *in banc* consideration if it believes a later decision correctly states the law. *See South Corp. v. United States,* 690 F.2d 1368, 1370 n. 2, 215 USPQ 657, 658 n. 2 (Fed.Cir.1982).

■ The unqualified, broad statement in *Perini* would conflict with our precedent cited above and, therefore, could not be controlling. However, the statement need merely be qualified to be in line with prior decisions. A disputed issue of fact may, of course, arise in connection with interpretation of a term in a claim if there is a genuine evidentiary conflict created by the underlying probative evidence pertinent to the claim's interpretation. *See Moeller v. Ionetics, Inc.,* 794 F.2d 653, 657, 229 USPQ 992, 994 (Fed.Cir.1986). However, without

---

**4.** *Palumbo v. Don–Joy Co.,* 762 F.2d 969, 974, 226 USPQ 5, 8 (Fed.Cir.1985) contains some-

what similar language but is not as unequivocal.

such evidentiary conflict, claim interpretation may be resolved as an issue of law by the court on summary judgment taking into account the specification, prosecution history or other evidence as held in *Howes.* Conflicting opinions on the meaning of a term which are merely conclusory do not create such evidentiary conflict. *Barmag Barmer,* 731 F.2d at 836–37, 221 USPQ at 564–65. In sum, any broad statement in our precedent which could be read to say that a disagreement over the meaning of a term in a claim *ipso facto* raises an issue of fact is not the law of this circuit and may not be invoked or relied on as precedent.

■■■ With the foregoing in mind, we conclude that the evidence here precludes an interpretation of the claim limitations requiring a "deformed ... integral" section of the probe with "a sharp edge ... to inscribe fixedly into said probe cover," which would literally encompass a separate ring with no sharp edge performing a friction fit. Where a claim does not read on an accused device exactly, there can be no literal infringement. *Townsend Eng'g,* 829 F.2d at 1090, 4 USPQ2d at 1139; *Brenner,* 773 F.2d at 307, 227 USPQ at 160; *Builders Concrete, Inc.,* 757 F.2d at 257, 225 USPQ at 241. *See also Pennwalt Corp.,* 833 F.2d at 949–54, 4 USPQ2d at 1751–55 (Nies, J., additional views).

### B. *Section 112 ¶ 6*

AMEC argues that "before literal infringement could be eliminated," the *district* court had to determine whether the IVAC devices "infringed the '762 patent under the means plus function test [of 35 U.S.C. § 112 ¶ 6], as properly defined and applied." The cited statutory provision reads:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof. 35 U.S.C. § 112 (1982).

Section 112 ¶ 6 provides direction with respect to how the part of a claim framed in means-plus-function language must be interpreted within an infringement analysis. *See Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d at 933–34, 4 USPQ2d at 1738. That part of a claim contains means-plus-function language does not make section 112 ¶ 6 applicable to the entirety of the claim. Thus, contrary to AMEC's understanding, section 112 ¶ 6 is clearly not a separate *test* for infringement inasmuch as an infringement determination necessarily involves all parts of the claim. *See Perkin–Elmer Corp. v. Westinghouse Elec. Corp.,* 822 F.2d 1528, 1533, 3 USPQ2d 1321, 1324–25 (Fed.Cir.1987). Even with respect to the part of the claim to which it pertains, section 112 ¶ 6 does not, in any event, *expand* the scope of the claim. An element of a claim described as a means for performing a function, if read literally, would encompass *any* means for performing the function. *Pennwalt Corp.,* 833 F.2d at 934, 4 USPQ2d at 1739. But section 112 ¶ 6 operates to *cut back* on the types of *means* which could literally satisfy the claim language. *Id.; Data Line Corp. v. Micro Technologies, Inc.,* 813 F.2d 1196, 1201, 1 USPQ2d 2052, 2055 (Fed.Cir. 1987). On the other hand, the section has no effect on the function specified—it does not extend the element to equivalent functions. *Pennwalt Corp.,* 833 F.2d at 934, 4 USPQ2d at 1739. *Cf. D.M.I., Inc. v. Deere & Co.,* 755 F.2d 1570, 1575, 225 USPQ 236, 239 (Fed.Cir.1985). Properly understood section 112 ¶ 6 operates more like the reverse doctrine of equivalents than the doctrine of equivalents because it restricts the scope of the literal claim language.

■■■ In sum, for a means-plus-function limitation to read on an accused device, the accused device must incorporate the means for performing the function disclosed in the specification or a structural equivalent of that means, plus it must perform the identical function. Section 112 ¶ 6 can never provide a basis for finding that a means-plus-function claim element is met literally where the function part of the element is not literally met in an accused device.

### C. *Doctrine of Equivalents*

■■■ Where a claim does not literally read on an accused device because one or more limitations of the claim are not met

exactly, infringement may, nevertheless, be found if such limitations are satisfied equivalently. The accused device may then be said to perform substantially the same overall work to achieve substantially the same overall result by substantially the same means. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1949); *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1258, 9 USPQ2d 1962, 1967 (Fed.Cir.1989); *Pennwalt Corp.*, 833 F.2d at 934, 4 USPQ2d at 1739. The record before us is devoid of evidence which would support a finding that the limitations specified in the claim that are not found exactly in the accused probe are met by equivalents. AMEC does not here assert that a friction fit is equivalent to an inscription fit. Nor could it in view of the prosecution history which in this context operates as an estoppel. *See Loctite Corp.*, 781 F.2d at 870–71, 228 USPQ 96–97; *Townsend Eng'g*, 829 F.2d 1086, 4 USPQ2d 1136.

Rather, AMEC asserts that the IVAC devices perform an inscription fit with equivalent structure. That argument fails for at least two reasons. First, the evi-dence of superficial scratches raises no genuine issue that the IVAC probe assembly performs an inscription fit, for reasons previously explained. Second, AMEC presented no evidence raising a genuine issue that the separately formed ring is equivalent to the structure of the claim, namely, a "deformed" "integral" section of the probe which terminates "in a sharp edge". Attorneys' argument is no substitute for evidence.

### III

### CONCLUSION

No genuine issue of material fact was raised with respect to the issue of infringement by the accused IVAC devices. Further, because of the absence of evidence tending to show that the IVAC device met all limitations of the asserted claims, either literally or equivalently, IVAC is properly entitled to summary judgment as a matter of law.

AFFIRMED.