897 F.2d 538
 15 U.S.P.Q.2d 1479
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Bruce HOWES, Plaintiff-Appellant,
v.
The GREAT LAKES PRESS CORPORATION and Holt Manufacturing
Company, Defendants/Cross-Appellants.
 Nos. 89-1288, 89-1289.
 United States Court of Appeals, Federal Circuit.
 Feb. 8, 1990.
Rehearing Denied March 12, 1990.
Suggestion for Rehearing In Banc Declined March 23, 1990.
 
 Before RICH, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and MICHEL, Circuit Judge.
 RICH, Circuit Judge.
 
 DECISION
 
 1
 Appellant Bruce Howes (Howes) appeals from the December 14, 1988 judgment of the United States District Court for the Southern District of New York, 698 F.Supp. 1120, 10 USPQ2d 1641, entered upon orders granting the motions of defendants The Great Lakes Press Corporation (Great Lakes) and Holt Manufacturing Company (Holt) for directed verdicts of non-infringement of United States patent number 3,966,396 entitled TEXTILE PRINTING PROCESS AND TRANSFER MEDIUM. Great Lakes and Holt cross appeal. We affirm.
 
 OPINION
 
 2
 We affirm because Howes failed to offer evidence from which a reasonable juror could conclude that any of the accused processes "us[es] an ink dot pattern ... having a dot structure reduced in size in proportion to ink transfer sublimation characteristics" (our emphasis). The meaning of this limitation is a question of law for the court. Johnston v. IVAC Corp., 885 F.2d 1574, 12 USPQ2d 1382 (Fed.Cir.1989). At trial, Howes contended that the limitation meant only that there must be a "significant reduction from industry standard for conventional printing," and proceeded to prove its infringement case on this assumption.
 
 
 3
 We reject Howes' interpretation of the claim. The claim requires "proportional" reduction of the dots. "Proportional" is a relative term, which, in ordinary usage, means having the same or a constant ratio.[1] Thus, for example, if the sublimation dyes used in defendants' processes expanded fivefold on application of heat and pressure, "proportionally" reduced dots would be approximately 20% of the size of the original dots.
 
 
 4
 With this correct construction in mind, Howes' proof of infringement was wholly inadequate to create a factual issue for the jury to decide. Howes offered evidence showing that the defendants made dot reductions to compensate for expansion of dye-inks during the sublimation process, and that the dot reductions were significantly greater than those made in conventional lithography. Howes also attempted to show infringement by measuring the defendants' end results and by offering general statements on estimates of industry experience of non-heat transfer dot gain for comparison purposes. But Howes introduced no evidence showing that the dot reductions were proportional to the expansion of the dyes, as the claim requires.
 
 
 5
 What was required for Howes to create an issue for the jury on this limitation was evidence showing the proportionality of the dye expansion to the dot reduction. Evidence that there was some reduction in dot size to compensate for subsequent expansion shows only half of the picture: the expansion must be proportional. Likewise, showing that the reduction in dot size was larger than conventional still begs the question whether the reduction was proportional.
 
 
 6
 In deciding that there was no factual issue for the jury to decide, we have taken into account the opinion of Howes' expert Payne who answered a conclusory "yes" to counsel's leading question: "And the gain, as you saw it, was that in proportion to the sublimation characteristics of dyes ...?" Taken in context, Payne's conclusory statement means only that in his opinion the defendants reduced the dot size to compensate for sublimation expansion, perforce the reduction was in proportion to the expansion of the dye. However, Payne's inference as to proportionality finds no support in the record.
 
 
 
 [1]
 There is no indication in this case that the word has any special meaning to those skilled in the offset printing art