**Nicolas KALIARDOS, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, BASF Corporation, Daubert Industries, Inc., H.B. Fuller Company, National Starch & Chemical Corporation, and Beazer East, Inc., jointly and severally, Defendants.**

No. 88–73729.

United States District Court, E.D. Michigan, S.D.

Nov. 12, 1991.

Alex Rhodes, Richard Knoll, Birmingham, Mich., for Nicolas Kaliardos.

Herbert Furman, General Motors Corp., Detroit, Mich., Bernard J. Cantor, Harness

Dickey, Troy, Mich., for General Motors Corp., BASF Corp. and H.B. Fuller Co.

Ira S. Auslander, Auslander & Churilla, John A. Artz, William J. Schramm, Brooks & Kushman, Southfield, Mich., for Daubert Industries, Inc.

William G. Abbatt, Ernie L. Brooks, Brooks & Kushman, Bob Brandenburg, Southfield, Mich., for Nat. Starch & Chemical Corp. and Beazer East, Inc.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' NATIONAL STARCH & CHEMICAL CORPORATION AND BEAZER EAST, INC. MOTION FOR SUMMARY JUDGMENT ON COUNT I, PATENT INFRINGEMENT

GADOLA, District Judge.

Plaintiff Nicolas Kaliardos filed this complaint on September 14, 1988, charging General Motors Corporation and BASF Corporation with infringing U.S. Patent Nos. 3,959,530 and 4,356,036. In February 1990 plaintiff added claims of infringement against National Starch & Chemical Corporation. In September 1990 plaintiff added claims of infringement against Beazer East, Inc.

The patents each relate to specific mixtures of chemical ingredients for wax-type, solvent-based, anti-rust coatings. Plaintiff accuses National Starch and Beazer of infringement by manufacturing and selling wax-type, solvent-based coatings to General Motors. Defendants National Starch and Beazer now bring the instant motion for summary judgment on the patent infringement claims against them. For the reasons set forth below, the defendants' motion is granted.

### FACTS

During the 1970's vehicle corrosion was a serious problem for automobile manufacturers. The plaintiff, a self-taught chemist, experimented with, tested and invented two wax-type, anti-corrosion coatings. Plaintiff submitted his inventions to the Patent and Trademark Office (PTO). After some language difficulties expressed by the Patent Office Examiner, plaintiff was granted U.S. Patent No. 3,959,530 and No. 4,356,036. Claim 1 to U.S. Patent No. 3,959,530 reads as follows:

A cleaning and protective coating composition consisting essentially of a mixture of

wax residue such as paraffin and microcrystalline wax,

*perchloroethylene,*

petroleum distillate *having a boiling point ranging between 350 degrees and 380 degrees F.,* and

a nonionic surfactant such as nonylphenoxypoly (ethyleneoxy) and

a small amount of [N.N.N', N'–tetrakis (2–hydroxypropyl) ethylenediamine].

The italicized terms were changes made by the plaintiff in response to references cited by the PTO. These changes were necessary to secure the patent. Claim 1 to U.S. Patent No. 4,356,036 reads as follows:

An anti-corrosion coating composition comprising

a mixture of aluminum paste or zinc paste containing aluminum or zinc flakes and a solvent,

microcrystalline wax,

aromatic hydrocarbon resin *having a softening point, R and B, of 70 C.–140 C.,*

chlorinated rubber *having a combined chlorine content of at least 66%,*

neutral barium sulfonate,

chlorinated solvent,

aromatic hydrocarbon solvent and

mineral spirits.

Again, the italicized terms were changes made by the plaintiff in response to references cited by the PTO. These changes were necessary to secure the patent. Plaintiff asserts he invented the two wax-type, anti-corrosion coatings to specifically meet the requirements of General Motors Material Specifications 998–1128 and 998–2150. General Motors never accepted any of plaintiff's coatings for use.

From 1980 to the present, General Motors has used wax-type coatings on the inside surfaces of its automobiles. From the mid–1970s, Koppers, Inc. and Parr,

Inc., predecessor companies to National Starch and Beazer, supplied General Motors with a wax-type coating, defendants' product No. 820–1913, that General Motors sprayed into the interior of car doors and other body parts. Two prototype batches of a dripless coating, defendants' product No. 820–1914, were made in 1987–88. Both of these products correspond to General Motors Material Specification 998–2150. According to defendants and their affiant Mr. Habjanic, no coating was supplied by National Starch, Beazer or any predecessor company that met General Motors Material Specification 998–1128. National Starch is the successor to a part of Beazer's business that used to supply coating No. 820–1913.

Plaintiff claims that General Motors received proprietary information from plaintiff during the testing process on his patented coating. Plaintiff further claims that General Motors gave this information to National Starch and Beazer, among others, in order to duplicate and utilize the coatings without compensating the plaintiff. National Starch, Beazer and General Motors deny these allegations. Further, defendants' affiants Mr. Habjanic and Mr. Meilus state that the defendants' products No. 820–1913 and No. 820–1914 do not contain the identical nor the essential ingredients contained in the plaintiff's patented coatings. The plaintiff, in a sworn affidavit, disputes this last contention, further adding that "the ingredients or their equivalents which Mr. Habjanic represents are not present in Koppers 820–1913 and 820–1914 coatings are necessary for meeting the General Motors 998–1128 and 998–2150 Material Specifications." [1]

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." (Citation omitted.) *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed.1979)). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict

---

**1.** Kaliardos Affidavit at para. 13.

for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

■ Further, summary judgment is as applicable in patent cases as any other. As the Federal Circuit stated in *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1576–77 (Fed. Cir.1989):

As in other cases, the grant of summary judgment under Fed.R.Civ.P. 56 is appropriate in a patent case where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.

\* \* \* \* \* \*

[T]he motion of an accused infringer for judgment on the ground of non-infringement of a patent may be granted where the patentee's proof is deficient in meeting an essential part of the legal standard for infringement.

## APPLICABLE LAW

A patent is a federal statutory grant under 35 U.S.C. § 101. The patent, to be protected, must comport with certain statutory requirements. Section 112 of Title 35 states in relevant part that:

[A patent] specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

35 U.S.C. § 112. The Federal Circuit has stated that "[t]he claims alone delimit the right to exclude; only they may be infringed." *Environmental Instruments Inc. v. Sutron Corp.,* 877 F.2d 1561, 1564 (Fed. Cir.1989).

■ In patent law, every element of the claim must be found in the accused product—either actually or by a substantially equivalent element—in order to find an infringement.

[W]here the respondent in constructing his [product] omits one of the ingredients of the complainant's combination, he does not infringe the complainant's patent.

*Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 950 (Fed.Cir.1987) (Nies, J., concurring), *cert. denied,* 485 U.S. 961, 1009, 108 S.Ct. 1226, 1474, 99 L.Ed.2d 426 (1988); *see also Lemelson v. United States,* 752 F.2d 1538, 1551 (Fed.Cir.1985) ("the plaintiff must show the presence of every element or its substantial equivalent in the accused [product]").

Thus, the accused infringer ... is entitled to summary judgment, on the ground of non-infringement, by pointing out that the patentee failed to put forth evidence to support a finding that [an element] of the asserted claim was met by the ... accused [product].

*Johnston,* 885 F.2d at 1578.

■ Infringement may be shown in only two ways. First, if every single element of limitation in the claim is found in the accused product, there is *literal infringement. See Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.,* 757 F.2d 255, 257 (Fed.Cir.1985). Second, infringement can occur where the accused product has corresponding elements which perform substantially the same function in substantially the same way to obtain the same result. *See Graver Tank Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 609–10, 70 S.Ct. 854, 856–57, 94 L.Ed. 1097 (1950); *Builders Concrete,* 757 F.2d at 258. This second path to infringement is called the doctrine of *equivalents.*

■ The doctrine of equivalents will not extend to allow the patentee to recapture through equivalence certain coverage given up during prosecution of his patent application. *See Pennwalt*, 833 F.2d at 934 n. 1. Therefore, the language changed by the plaintiff in securing his patents is critical if the doctrine of equivalents infringement is pursued. This limitation is called *prosecution history estoppel.*

> Prosecution history estoppel, which precludes a patentee from obtaining a claim construction that would resurrect subject matter surrendered during prosecution of his patent application ... limits a patentee's reliance on the doctrine of equivalents....

*Builders Concrete*, 757 F.2d at 258; *see also Jonsson v. Stanley Works*, 711 F.Supp. 1395, 1403 (N.D.Ohio 1989) ("Arguments and remarks made by plaintiff's counsel during prosecution of the patent application can also be used to determine the scope of the claims"), *aff'd*, 903 F.2d 812 (Fed.Cir.1990). Finally, a claimant may not "broaden his claim by dropping [an] element which he was compelled to include in order to secure his patent." *I.T.S. Rubber Co. v. Essex Rubber Co.*, 272 U.S. 429, 443, 47 S.Ct. 136, 141, 71 L.Ed. 335 (1926).

## ANALYSIS

■ Plaintiff Kaliardos claims that National Starch and Beazer have infringed Claim 1 of each of his patents. However, plaintiff has not produced sufficient initial or rebuttal evidence to meet his burden of production.

In response to interrogatories asking plaintiff which of the products manufac-tured or sold by National Starch and/or Beazer infringes plaintiff's patents, plaintiff identified the product sold under General Motors Specification 998–1128. However, no sales of this product by National Starch or Beazer have been identified by the plaintiff.[2] In fact, the defendants' affiant states that no product sold by National Starch, Beazer or their predecessors matched General Motors Material Specification 998–1128.[3] If the defendants did supply General Motors with the coating it used under 998–1128, then plaintiff should have come forth with some hard evidence. The plaintiff states that he needs more time to effect discovery to retrieve this evidence. However, National Starch has been a named defendant for 20 months. Beazer has been a named defendant for over 13 months. Thus, this court is lead to the conclusion that there is either no link between the movants and 998–1128, or plaintiff has been extremely dilatory in his discovery. Either conclusion is fatal to plaintiff's case.

■ Further, the affidavits of Habjanic and Meilus state that National Starch's and Beazer's wax-type coatings do not include (a) perchloroethylene,[4] (b) nonionic surfactants,[5] (c) [N.N.N', N'–tetrakis (2–hydroxypropyl) ethylenediamine],[6] (d) mixtures of aluminum paste or zinc paste or equivalent mixtures,[7] (e) aromatic hydrocarbon resins having softening points, R and B, of 70 degrees C.–140 degrees C.,[8] (f) chlorinated rubber having a combined chlorine content of at least 66%,[9] (g) aromatic hydrocarbon

2. Plaintiff's Answer No. 17 to Defendant Beazer's First Set of Interrogatories; Plaintiff's Answer No. 7 to Defendant National Starch's First Set of Interrogatories.

3. Habjanic Affidavit at para. 3.

4. Habjanic Affidavit at para. 7 (referring to movants' product 820–1913); *id.* at para. 11 (referring to movants' product 820–1914); Meilus Affidavit at paras. 7 and 14 (referring to all movants' anti-corrosion coatings).

5. Habjanic Affidavit at para. 9 (referring to movants' product 820–1913); Meilus Affidavit at para. 8 (referring to all movants' anti-corrosion coatings).

6. Meilus Affidavit at para. 9 (referring to all movants' anti-corrosion coatings).

7. Habjanic Affidavit at para. 12 (referring to movants' products 820–1913 and 820–1914).

8. Meilus Affidavit at para. 10 (referring to all movants' anti-corrosion coatings).

9. Habjanic Affidavit at para. 13 (referring to movants' products 820–1913 and 820–1914); Meilus Affidavit at para. 11 (referring to all movants' anti-corrosion coatings).

solvents,[10] or (h) chlorinated solvents.[11] Plaintiff has not put forth any proof that these affidavits are false or misleading. The only evidence plaintiff has offered is his own affidavit. The plaintiff states that the ingredients of movants' products 820–1913 and 820–1914 listed in the attachments to the Habjanic Affidavit are accurate.[12] The plaintiff then points out that the ingredients in the movants' products are identified by their trademark names and not their chemical formulae.[13] The complainant continues:

> There are no disclosures in Attachments "A" and "B" of the ingredients in the trademarked products, their chemical formula [*sic*] or their percentages by weight.

Kaliardos Affidavit at para. 10. While this is true, this does not refute the very clear statements made by Mr. Habjanic and Mr. Meilus. All this does is tell the court that the plaintiff does not know these trademarked products' chemistry. This bare statement does not indicate that the trademarked products used as ingredients in the movants' products contain any one of the elements in the patentee's claims.

Elements (a) through (c) are essential for literal infringement of Claim 1 to U.S. Patent 3,959,530. Element (a) is essential for equivalent infringement of Claim 1 to U.S. Patent 3,959,530. Elements (d) through (h) are essential for literal infringement of Claim 1 to U.S. Patent 4,356,036. Elements (e) and (f) are essential for equivalent infringement of Claim 1 to U.S. Patent 4,356,036. As not all elements are present in the movants products, patent infringement is not possible. Therefore, summary judgment in favor of the movants is proper. *Johnston*, 885 F.2d at 1578.

---

**10.** Meilus Affidavit at para. 13 (referring to all movants' anti-corrosion coatings).

**11.** Meilus Affidavit at para. 12 (referring to all movants' anti-corrosion coatings).

**12.** Kaliardos Affidavit at para. 8.

