**MONROE ENGINEERING PRODUCTS, INC., a Michigan corporation, Plaintiff,**

v.

**J.W. WINCO, INC., a Wisconsin corporation, Defendant.**

No. 94–74839.

United States District Court, E.D. Michigan, Southern Division.

Feb. 5, 1996.

Richard P. Vitek, W.R. Duke Taylor, Harness, Dickey & Pierce, P.L.C., Troy, MI, for Plaintiff.

Kenneth R. Nowakowski, Whyte Hirschboeck Dudek S.C., Milwaukee, WI, for Defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

In this patent infringement suit, Defendant J.W. Winco, Inc. ("Winco"), moves for summary judgment. Plaintiff Monroe Engineering Products, Inc. ("Monroe") contends that two of Winco's products violate United States Patent No. 4,598,614 (the "'614 patent") for a hand lever turning mechanism. I grant and deny the motion in part.

### I. *Background*

Simply stated, the '614 patent relates to a mechanical hand lever used to turn other objects. Generally, such hand levers are attached to an object such as a bolt. After attachment, the bolt can be turned by rotating the hand lever. The abstract of the '614 describes more precisely the function of such hand levers as follows:

> A ... mechanism for turning fastening devices particularly for a spindle, axle or the like, wherein a fastening element made of hard material may be rotated by a hand lever made of material softer than the fastening element, with *a coupling element affixed to the hand lever* and adapted to engage the fastening element to connect the fastening element and the hand lever in rotative engagement being forme of a material harder than the material of the

hand lever and *being anchored ... in the material of the hand lever* so as to be rotatable therewith.

As suggested by the emphasized text, this dispute centers on the "coupling element" and the "anchoring elements" of these tools.

The parties are competitors in the manufacture and sale of mechanical hand levers. Monroe is the distributor of a hand lever invented by Heinrich Kipp Werk of Sulz, Germany. Monroe bought the patent from Heinrich Kipp Werk in 1993. The Kipp design consists of an *annular* coupling element with anchoring pins arranged *uniformly* along the periphery of the top of the coupling element. See figure 1. A Reexamination Certificate B1 4,598,614 was issued on November 15, 1994.

During 1990–1992, Winco sold adjustable hand levers made by the NBK Company of Japan. I refer to this hand lever as the 1992 hand lever. These handles closely resemble the Monroe handles. When notified of the '614 patent in March 1992, Winco ceased selling them. Winco then designed a handle that contained an *octagonal* coupling element without anchoring elements. See figure 2. Testing of this design showed that the coupling element slipped prematurely. Thereafter, Winco made a hand lever containing the octagonal coupling element with six anchoring elements extending radially along the periphery of the coupling element. See figure 3. I refer to this design as the 1993 hand lever. Winco sold approximately 66,500 of these hand levers in 1993.

In January 1994, Winco made a new hand lever. This hand lever contains a *trapezoidal* coupling element with semicircular notches cut from each corner. It does not include any attached anchoring elements. See figure 4. I refer to this design as the 1994 hand lever. This hand lever was patented and is sold by Winco.

On December 1, 1994, Monroe filed suit contending that the 1993 hand lever and the 1994 hand lever infringe on the '614 patent.

**Fig. 1**

**Fig. 2**

**Fig. 3**

**Fig. 4**

## II. *Summary Judgment:*

A patentee must prove infringement by a preponderance of the evidence. In patent cases, like other cases, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). "The motion of an accused infringer for judgment on the ground of non-infringement of a patent may be granted where the patentee's proof is deficient in meeting an essential part of the legal standard for infringement." *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1577 (Fed.Cir. 1989).

To decide this, a court must look beyond the pleadings and evaluate the evidence to determine whether a trial is necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If defendant carries its burden showing there is insufficient evidence to support a claim, plaintiff must show that a genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). A mere scintilla of evidence is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff.

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

### III. *Analysis*

■ Determination of patent infringement is a two-step process. First, I must determine the meaning of the claims. Second, I must then apply the teachings of the claims to the accused devices. *Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed.Cir.1990). The meaning of a claim is strictly a question of law for the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.) (en banc), *cert. granted*, —— U.S. ——, 116 S.Ct. 40, 132 L.Ed.2d 921 (1995). In determining the meaning of a claim, I must consider the claim language, the specification, and the prosecution history. *Id.* at 979. Expert testimony, including evidence of how those skilled in the art would interpret the claims, may also be used. *Id.*

### A. *The Meaning of the '614 Patent:*

■ To establish an infringement, a patentee must show that every limitation set forth in a claim is found in the accused product exactly or by a substantial equivalent. *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed.Cir.1989). The '614 patent consists of a single claim which includes nine elements. Winco concedes that seven of these nine elements are present in its hand levers but contends that the other two elements are not. My preliminary task is to determine the meaning of the two contested elements.

In pertinent part, the '614 patent provides: What is claimed is:

1. A hand lever mechanism, particularly for turning a member, such as a spindle, axle or the like about an axis, comprising:

\* \* \*

—a hand lever made of synthetic material softer than said fastening element material;

—a coupling element formed with an *annular configuration* consisting essentially of a metallic pressure die cast member having one side affixed to said hand lever and an opposite side engaging said fastening element to connect said fastening element and said hand lever in rotative engagement with each other, whereby said coupling element is anchored in the material of said hand lever and is rotatable therewith;

\* \* \*

—anchoring elements comprising projecting elements *arranged uniformly* along an outer periphery of said coupling element for anchoring said coupling element in the material of said hand lever;

Winco contends that the coupling elements in its hand levers are not "annular" in their configuration and that the anchoring elements in these devices are not arranged "uniformly."

■ Preliminarily, I note that in construing the terms "annular configuration" and "arranged uniformly," I am required to give these words their ordinary meaning in the absence of an indication in the patent to the contrary. *Gentex Corp. v. Donnelly Corp.*, 69 F.3d 527, 530 (Fed.Cir.1995). Furthermore, if "an inventor chooses to be his own lexicographer and to give terms uncommon meanings, he must set out his uncommon definition in some manner within the patent disclosure." *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir.1992). Importantly, a disagreement over the meaning of a term within a claim does not necessarily create a genuine issue of material fact. *Id.* at 1387.

■ Monroe argues that "annular configuration" refers to the relationship between the coupling element and the fastening element within the hand lever. Through its expert,[1] it contends that this language is not a reference to the shape of the coupling element, rather, that this term establishes that the coupling element must encircle or ring the hand lever's fastening element. I find this untenable.

---

**1.** I note that the court *may*, at its discretion, evaluate expert testimony, including evidence of how those skilled in the art would interpret patent language when the court cannot clearly comprehend the language on its own. *Markman*, 52 F.3d at 981. Expert testimony cannot vary or contradict the terms of a patent. *Id.*

The claim provides the hand lever comprises "a coupling element formed with an annular configuration consisting essentially of a metallic pressure die cast member...." Monroe's conclusion that this language describes the relationship between the coupling element and the fastening element is strained. The claim states that the coupling element is *formed* with an annular configuration. To "form" an object means to give it form or shape. This interpretation is strengthened by the description of the coupling element as being die cast, which demonstrates that this claim element refers to the shape of the coupling element.

 Monroe's argument is also weakened by reference to the specification and the prosecution history of the patent. While the claims measure an invention, claims are construable in light of the specification. *SRI International v. Matsushita Elect. Corp. of America*, 775 F.2d 1107, 1121 (Fed.Cir.1985). The specification explicitly states that annular configuration refers to the shape of the coupling element:

> As will be noted from the foregoing, in the development of the invention, the coupling element which is mounted in the hand lever is formed with an annular shape....

Col. 4, lines 39–42. Monroe also depended upon the annular shape of its device to distinguish it from prior art.[2]

Finally, Monroe's definition of "annular configuration" is unusual. If the inventor had intended this term to mean what Monroe suggests, he was obligated to provide this definition within the patent. *Intellicall*, 952 F.2d at 1388. Not having done so, I conclude the ordinary meaning applies.

From Webster's Third International Dictionary, Winco contends that the term "annular configuration" refers to the shape of the coupling element and concludes it must mean "circular." It argues that the term "annular configuration" limits the shape of the cou-

pling element to a perfect circle. But that definition is overly narrow and literal. The term annular derives from the Latin term *anulus*, meaning "ring." The term configure derives from the Latin term *configurare*, meaning "to form from or after." Webster's dictionary defines annular as "of or relating to a ring: forming a ring: shaped like a ring." I conclude that the '614 patent requires the coupling element to be circular or ring-like in shape, but not necessarily a perfect circle.

 Also at issue in this dispute is what it means to arrange anchoring elements "uniformly." The meaning of this term is more clear. The claim language of the '614 patent requires "anchoring elements comprising projecting elements arranged uniformly along an outer periphery of said coupling element for anchoring said coupling element in the material of said hand lever." Winco contends that this language requires that all anchoring elements be evenly spaced from each other. But Winco again overstates the limits of the claim language. Uniform derives from the Latin *uniformis*, literally "one form." Webster's defines "uniform" as "marked by lack of variation, diversity, change in form, manner, work or degree." It does not follow that there can be no variation in the arrangement of the anchoring elements. Rather, as stated by Monroe, a uniform arrangement of the anchoring elements means that "no significant portion of the outer periphery should be lacking or treated differently or in a different manner for the placement of the projecting elements." It does not require that all of the projecting elements be arranged equidistantly.

B. *Application of the '614 Patent to the Accused Devices:*

1. *Literal Infringement:*

 To establish literal infringement, every limitation set forth in a claim must be

---

2. In May 1994 Monroe filed a Request for Reexamination of the '614 patent in view of an earlier German utility model in combination with a Japanese reference. In support of its Request for Re-examination, Monroe compared, side by side, the limitations of its patent to the prior art German and Japanese references and argued that its patent was patentable over those prior references. Winco argued the following portions

of Monroe's argument support its definition of "annular" and "uniformly:"

| a coupling element formed with an annular configuration.... | The German reference ... illustrates that it does not include an annular member.... Thus, the German reference fails to meet this limitation. |

found in an accused product. *Southwall Technologies, Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1575 (Fed.Cir.1995); *Becton Dickinson,* 922 F.2d at 796. As one commentator has stated, "[d]etermination of whether or not there has been infringement then becomes essentially a process of comparison: Are the features (that is, the effective limitations) recited in the patent claims to be found in what is alleged to infringe?" Peter D. Rosenberg, *Patent Law Basics* § 16.03 (1994).

 I cannot conclude as a matter of law that the 1993 hand lever does not literally infringe the '614 patent. First, there is a question of material fact as to whether the octagonal coupling element of this device is circular as I have defined the term. While the coupling element of the 1993 hand lever has sides and is not a perfect circle, it is not a triangle, rectangle, or other polygon which no one could reasonably argue is circular. The 1993 coupling element has a sufficient number of equilateral sides so that a reasonable jury could conclude it is circular or ring-like in shape as required by the '614 patent. Second, there is a question of material fact whether the anchoring elements in the 1993 hand lever are arranged uniformly. The anchoring elements of the 1993 hand lever are arranged in a pattern, two clusters of three anchoring elements equidistantly spaced. A jury could rationally conclude that this pattern is uniform, lacking significant variation to be characterized otherwise.

 Conversely, it is readily apparent that the '614 patent does not literally read on Winco's 1994 hand lever. This device does not include an annular coupling element. The coupling element in the 1994 hand lever is plainly not circular; it is trapezoidal with a semi-circular notch in each corner. Moreover, the 1994 hand lever does not have anchoring elements arranged uniformly along the outer periphery of the coupling element. In fact, the 1994 hand lever does not have distinct anchoring elements. Rather, the coupling element anchors itself via its shape and notched corners. A reasonable jury could not find that the 1994 hand lever literally infringes upon the '614 patent.

### 2. *Doctrine of Equivalents:*

In considering whether summary judgment is appropriate under the doctrine of equivalents, I first note that Monroe argues that *Hilton Davis Chemical Co. v. Warner-Jenkinson Company, Inc.,* 62 F.3d 1512 (Fed.Cir.1995), precludes summary judgment where the theory of infringement is equivalency. This is an erroneous reading. It is true that the United States Court of Appeals for the Federal Circuit stated that infringement under the doctrine of equivalents is a question of fact. *Hilton Davis,* 62 F.3d at 1520. But this well established rule has never precluded consideration of summary judgment when the theory of infringement is based upon equivalency.

 In spite of the factual nature of the doctrine of equivalents, courts may grant summary judgment for or against an equivalency claim if there is no genuine issue of material fact. 4 Donald S. Chisulm, *Patents* § 18.06[2][a] (Cumulative Supp.1995). The United States Courts of Appeals for the Federal Circuit has stated that "[a]lthough infringement, either literal or under the doctrine of equivalents, is a question of fact, '[s]ummary judgment is as appropriate in a patent case as in any other' where no genuine issue of material fact is present and the movant is entitled to judgment as a matter of law." *Townsend Engineering Co. v. HiTec Co., Ltd.,* 829 F.2d 1086, 1089 (Fed.Cir.1987). (Citations omitted). In *London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, 1537–38 (Fed.Cir.1991), the Federal Circuit held that summary judgment had been properly granted against the patentee's doctrine of equivalents infringement charge:

Since one principal purpose of summary judgment 'is to isolate and dispose of factually unsupported claims or defenses,' Fed. R.Civ.P 56 requires that the nonmoving party 'designate "specific facts showing that there is a genuine issue for trial." ' There can be 'no genuine issue as to any material fact' where the nonmoving party's proof is deficient in meeting an essential part of the applicable legal standard, since such failure renders all other facts immaterial.... Thus, in determining whether

the district court correctly granted the [defendant/movant's] motion for summary judgment of non-infringement ..., we initially must determine whether [the plaintiff/nonmovant's] proof was sufficient to satisfy the legal standard for infringement under the doctrine of equivalents.... Such proof is sufficient if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'

Nothing in the *Hilton Davis* opinion undermines this and other precedent finding summary judgment appropriate in cases implicating the doctrine of equivalents. *See also Hoganas AB v. Dresser Industries, Inc.*, 9 F.3d 948 (Fed.Cir.1993); *Chemical Engineering Corp. v. Essef Industries, Inc.*, 795 F.2d 1565, 1569 n. 5 (Fed.Cir.1986). In fact, the *Hilton Davis* opinion explicitly states that the case "presents an opportunity to restate—not revise—the test for infringement under the doctrine of equivalents." *Hilton Davis*, 62 F.3d at 1516.

The essence of the doctrine of equivalents is that it permits recovery for infringement where the accused device does not fall within the literal scope of the claims of a patent. If there was no doctrine of equivalents, patent infringement would only occur when the accused device and the patented device were identical. In *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 607, 70 S.Ct. 854, 855–56, 94 L.Ed. 1097 (1950), the Supreme Court noted that limiting patent rights to literal infringement "would place the inventor at the mercy of verbalism and would be subordinating substance to form." Such limited protection would encourage infringers "to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough ... [to evade] the reach of law." *Id.*

■ The doctrine of equivalents was recently restated in *Hilton Davis*. In that opinion, the United States Court of Appeals for the Federal Circuit first noted that in *Graver Tank* the Supreme Court made insubstantial differences the necessary predicate for infringement under the doctrine of equivalents. *Id.* at 1517. The doctrine of equivalents applies if, and only if, "the differences between the claimed and accused products or processes are insubstantial." *Id.*, citing *Graver Tank*, 339 U.S. at 610, 70 S.Ct. at 857. To determine whether there are insubstantial differences, the generally applied test is the triple identity test: an accused device infringes upon a claim under the doctrine of equivalents if it performs substantially the same overall function, in substantially the same way, to produce substantially the same overall result as the claimed invention. *Graver Tank*, 339 U.S. at 608, 70 S.Ct. at 856.

■ There is no basis to grant Winco's motion for summary judgment regarding the 1993 hand lever under the doctrine of equivalents. Winco simply declares that the 1993 hand lever is not an equivalent of the '614 patent. However, the differences between the 1993 hand lever and the '614 hand lever are modest and could be found to be insubstantial by a reasonable jury. A reasonable jury could readily conclude that an octagonal coupling element performs the same function in the same way to achieve the same result as an annular coupling element. Similarly, a reasonable jury could readily conclude that the six anchoring elements of the 1993 hand lever perform the substantially the same overall function in substantially the same way to produce substantially the same overall result as the eight anchoring elements of the '614 patent. Clearly, there are genuine issues of material fact concerning infringement by equivalence and the 1993 hand lever. Therefore, this motion for summary judgment is denied.

■ Winco argues more vigorously that the 1994 hand lever does not infringe under the doctrine of equivalents. Winco properly contends that the doctrine of equivalents is not a license to ignore claim limitations, citing *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 398 (Fed.Cir.1994). It then states that only if the 1994 hand lever contains specific structures which are at least the equivalent of all of the limitations of the '614 patent claim can the 1994 hand lever infringe under the doctrine of equivalents. *Southwall Technologies*, 54 F.3d at 1579. Winco concludes that a hand lever which contains a trapezoidal coupling element with no projecting anchoring elements can not be

the equivalent of a hand lever with an annular coupling element with projecting anchoring elements arranged uniformly along an outer periphery of the coupling element. I disagree.

A reasonable jury could conclude that the 1994 hand lever contains specific structures which are the equivalent of an annular coupling element and uniformly arranged anchoring elements. If one superimposes a circle within Winco's trapezoidal coupling element, it is arguable that the 1994 hand lever is in fact an annular coupling element with eight projecting anchoring elements. See fig. 4. In effect, Winco could be said to have combined the coupling element and anchoring elements into a single concept, a trapezoidal coupling element. However, a party cannot avoid patent infringement by simply merging two claim elements and calling them one. The United States Court of Appeals has been clear that equivalency can exist when separate claim elements are combined into a single component on an accused device. *Dolly,* 16 F.3d at 398.

A one-to-one correspondence of claim elements is not required for a finding equivalence. As argued by Winco itself, there must simply be an equivalence in the accused device of each claim element in the patented device. The notched corners of the accused device could rationally be considered the equivalent of the uniformly arranged anchoring elements of the '614 patent. If one considers the notched corners of the 1994 hand lever as anchoring elements, the coupling element of this device is in fact annular and the equivalent of the coupling element in the '614 patent. A reasonable jury could find that the 1994 hand lever is merely an unsubstantially altered form of the invention set forth in the '614 patent, performing substantially the same overall function, in substantially the same way, to produce substantially the same overall result, as the '614 hand lever. Therefore, Winco's motion for summary judgment as to the 1994 hand lever and the doctrine of equivalents is denied.

*Conclusion*

Winco's motion for summary judgment regarding the allegation of literal infringement by the 1994 hand lever is granted. This device does not have either an annular configuration or distinct, uniformly arranged anchoring elements. However, all other motions for summary judgment are denied. I cannot conclude as a matter of law that the 1993 hand lever does not literally infringe the '614 patent or that neither the 1993 or 1994 hand levers are not equivalents of this device.

IT IS SO ORDERED.