**MID–AMERICA BUILDING PRODUCTS CORPORATION, a division of Tapco International Corporation, Plaintiff,**

v.

**RICHWOOD BUILDING PRODUCTS, INC., Defendant.**

**Civil Action No. 95–72741.**

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 23, 1996.

Jeffrey A. Sadowski, Stanley M. Erjavac, Harness, Dickey & Pierce, Troy, MI, for Plaintiff.

Gregory J. Lunn, Bruce Tittel, Wood, Herron & Evans, Cincinnati, OH, Susan Artinian, Jill M. Wheaton, Dan Wyllie, Dykema Gossett, Detroit, MI, for Defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

In this patent infringement and unfair competition suit, defendant Richwood Building Products, Inc. ("Richwood") moves for summary judgment. Plaintiff Mid–America Building Products Corporation ("Mid–America") contends that Richwood's Recess J–Block plastic wall mounting assembly violates United States Patent No. 5,326,060 (the "'060 patent"). Mid–America also contends that Richwood's alleged duplication of the '060 design amounts to unfair competition.

I find that plaintiff fails to allege facts which could support a charge of literal patent infringement. However, plaintiff also charges infringement under the doctrine of equivalents. A decision is pending in the United States Supreme Court which will determine the scope of that doctrine. *Warner–Jenkinson Co. v. Hilton Davis Chemical Co.*, No. 95–728, discussed in United States Law Week, 65 LW 3197. Because, in my view, *Warner–Jenkinson* is likely to be determinative of this summary judgment motion, I am inclined to await that decision before deciding this case. I hereby grant the parties two weeks to notify this court in writing whether or not they consent to such postponement. I will issue a decision on the unfair competition count along with the decision on infringement under the doctrine of equivalents.

## I. Background

The parties to this lawsuit are competitors in the development, manufacture, and sale of plastic wall mount assemblies. These devices enable builders to install outdoor electrical outlets and faucets on buildings with aluminum or plastic siding. Such siding has many advantages but is not independently strong enough to support these types of fixtures.

At issue in this dispute is a wall mount assembly developed and sold by Mid–America. This product received patent number '060 and consists of three primary components. First, there is a mounting bracket, which is placed behind the siding of the subject building. Second, there is a flange member, which is inserted from outside the building, through a hole in the siding, onto the mounting bracket. Finally, there is a cover piece, which is interposed between the mounting bracket and the flange member.

Mid–America filed suit charging Richwood with infringement of the '060 patent, based on a plastic wall mount assembly which Richwood manufactures and sells. Richwood moved for summary judgment on this count, arguing that because its device does not include a *cover piece* it does not infringe the '060 patent. Mid–America also charged Richwood with unfair competition, alleging that Richwood copied the wall mount assembly and sold it for the express purpose of trading on Mid–America's good will. Richwood maintains that the unfair competition count fails because product configuration is a significant inventive component of Mid–America's patent, and thus protected by patent law and not subject to unfair competition.

## II. *Standard of Review*

A patentee must prove infringement by a preponderance of the evidence. In patent cases, as in other cases, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ. P. 56(c). "The motion of an accused infringer on the grounds of noninfringement of a patent may be granted where the patentee's proof is deficient in meeting an essential part of the legal standard for infringement." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed.Cir.1989).

The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for plaintiff. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989). If defendant carries its burden of showing insufficient evidence to support a charge, plaintiff must show that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). A mere scintilla of evidence is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## III. *Analysis*

### A. Patent Infringement

■ Determination of patent infringement is a two-step process involving, first, interpretation of the patent claim and then determination whether the accused product is so similar as to infringe the patent.[1] The Supreme Court recently held that the first step, interpretation of the meaning of a claim, is strictly a question of law for the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). That case upheld the distinction between "construing the patent and determining whether infringement occurred," observing that " '[t]he first is a question of law, to be determined by the

court.... The second is a question of fact, to be submitted to a jury.' " *Id.* at ——, 116 S.Ct. at 1393, quoting *Winans v. Denmead*, 15 How. 330, 338, 14 L.Ed. 717.

■ As the court in *Markman* noted, in determining the meaning of a claim I must consider the claim language, the specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995), aff'd. at 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). I must then apply the teachings of the claims to the accused devices. *Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir.1990). To establish infringement, a patentee must show that every limitation set forth in a claim is found in the accused product exactly or by a substantial equivalent. *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed.Cir.1989). Where there is no factual dispute as to the application of the claim, as constructed by the court, to the accused product, I may grant summary judgment. *Id.*

### 1. Literal Infringement

■ To establish literal infringement, plaintiff must show that every limitation set forth in its claim is found in the accused product. *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir.1995).

■ The independent claim in Mid–America's '060 patent, Claim 1, includes five elements: [a] a mounting bracket, which is placed behind the siding of the subject building; [b] a flange member, which is inserted from outside the building, through a hole in the siding, onto the mounting bracket; [c] "a cover piece received within the wall of said flange member"; [d] "said cover piece being interposed between said flange wall of said flange member and said back wall of said bracket;" and [e] interengaging means on the inner surface of the mounting bracket's peripheral wall and the outer surface of the flange wall of the flange member, such that the bracket can be set at different openings.

---

**1.** In this opinion the word "claim" is used in the sense specific to patent law, to mean a portion of a patent which particularly points out and dis-

tinctly claims the subject matter which the patent applicant regards as his invention. 35 U.S.C. § 112.

The '060 patent also includes three dependent claims. Claim 2 consists of the wall mount assembly described in Claim 1 with a cover piece that has an opening so that the assembly can fit over a pipe or faucet. Claim 3 calls for a cover piece consisting of a plastic socket cover for an electrical box. And Claim 4 specifies an electric socket cover with hinged covers over the socket openings, for safety and cleaning.

As described in the background and summary section of the '060 patent, the patented design has several advantages over its predecessors. First, only the flange member is visible, allowing the bracket member to be made of a less expensive material and permitting the bracket member to be a different color from the siding. This makes color coordination easier and less costly. Second, the '060 mounting bracket can be used with existing short wires and electric boxes, eliminating the prior need to extend them. Finally, the '060 can be used with faucets. In such use, a cover piece is used to hide the hole in the siding through which the pipe extends. This cover piece can be color-coordinated with the flange member to be the same color as the siding.

Elements [c] and [d] of Claim 1, relating to the design and placement of a cover piece, are the center of controversy. The parties do not dispute that Richwood's product contains the first two elements of Claim 1. However, Richwood maintains that while its product may receive a standard-sized cover piece, it cannot receive a cover piece "interposed" between the flange member wall and the back wall of the base of the bracket, in the manner that the patented device does. According to Richwood, the accused flange member would not connect to the bracket if a cover piece were interposed.

Mid–America counters that Richwood's assembly can be used with a cover piece in the same way as the '060 patent. Mid–America says that "interposed" does not require the cover piece to be trapped or held in place by the flange member, but merely to be placed between the flange member and bracket.

As *Markman* established, claim interpretation is a matter of law which I must decide. *Markman* at 1393. I am thus called upon to determine the meaning of the word "interposed" as used in Claim 1 of the patent (element [c] above). A court must give a word its ordinary meaning, in the absence of any specialized definition in the patent. *Vitronics Corp. v. Conceptronic, Inc.* 90 F.3d 1576, 1582 (Fed.Cir.1996). Merriam Webster's Collegiate Dictionary defines "interpose" as, "to place in an intervening position." Merriam Webster's Collegiate Dictionary (10th ed.1995).

As far as the use of the assembly to mount a faucet, Mid–America's argument holds little water. Mid–America clearly requires a cover piece of the same color as the house's siding, having a central opening with a slit that fits over the faucet. Richwood's device needs no such cover since it in effect incorporates a hinged cover piece which fits directly over the faucet. Mid–America argues that since the built-in cover of Richwood's device can be knocked out and a cover made of the house's siding adapted for use, it can be used identically to Mid–America's device. But as discussed below, Mid–America has not shown any evidence that Richwood's device is so used or that Richwood encourages such use.

When used to mount electrical socket covers, the devices are employed in a more similar fashion. In both, the socket cover is not "trapped." As shown in the patent drawings, the "interengaging means" specified in Claim 1 ( [e] above) of the '060 patent permit the flange member and bracket to be spaced far enough apart to accommodate an electrical socket cover in a way similar to Richwood's device.

However, Richwood persuasively argues that the background language in the patent limits construction of the claim. The background section indicates that the patent sought to create an assembly where the back wall of the bracket was not visible, so that it could be made of less expensive material and not need to be color-coordinated with the house. The cover piece is "interposed" in the '060 assembly in the sense of being "trapped by" the flange so that it is held against the bracket and completely obscures the back wall. This distinguishes it from the accused device, where the back wall is made

of the same material as the flange member and is visible.

Richwood's interpretation is supported by language in the patent. See United States Patent 5,326,060, "Background and Summary of the Invention," column one, line 54 and "Description," column two line 61–62. Plaintiff cites numerous cases to the effect that the scope of a claim may not be limited by patent drawings and specifications. However, I do not here impose a narrower scope on the claim. Plaintiff's device must hold a cover piece fully eclipsing the back wall of the bracket. No "broader" use overlapping with the accused device is possible.

The difference between the devices may be one of form rather than substance, but as *Southwall* teaches, "[T]o establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall* at 1575.

Because the accused device does not in any application use a cover piece in the same manner as called for by the '060 patent, I cannot find literal infringement.

## 2. Inducement to Infringe and Contributory Infringement

■ Mid–America charges that Richwood may be liable for encouraging uses of its product which infringe the '060 patent, under a theory of inducement to infringe and contributory infringement. It maintains that Richwood customers have been instructed to use a piece of aluminum siding in a way similar to the use of the cover piece of the '060 patent. However, as Mid–America admits in its brief, it must prove direct infringement by a preponderance of evidence before it can prevail on inducement to infringe or contributory infringement. *Met–Coil Systems Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687 (Fed.Cir.1986). In this opinion I am dismissing the charge of literal infringement, although I leave open, for now, infringement under the doctrine of equivalents.

Even assuming that the patent infringement were proven as a pre-requisite, Mid–America has yet to come forward with any facts to support either inducement or contributory infringement. It has shown no evidence that Richwood has instructed its customers in the allegedly infringing usage, as required for inducement to infringe. Neither has it alleged facts that could support contributory infringement. Liability under that theory requires that a person sell a component of a patented device knowing that the component is made or adapted for use in the infringement of a patent. 35 U.S.C. § 271(c). Mid–America has not alleged that Richwood's product or any part of it is used as a component in a device which infringes the '060 patent.

After months of discovery and depositions of Richwood staff, Mid–America seeks further discovery on this issue. However, in order to survive summary judgment, a plaintiff must show there is a genuine issue of material fact, and must provide more than a "mere scintilla of evidence" in support of its complaint. *Celotex* at 324–25, 106 S.Ct. at 2553–54 (1986); *Anderson* at 252, 106 S.Ct. at 2512. Mid-America has failed to carry this burden, and a grant of summary judgment in favor of Richwood on this issue is appropriate.

As a further argument, Mid–America would have Richwood bear the burden of proving that it instructs its customers *not* to use the product in an infringing manner, relying on *EWP Corp. v. Reliance Universal, Inc.,* 221 U.S.P.Q. 542, 1983 WL 219 (S.D.Ohio 1983), *rev'd on other grounds,* 755 F.2d 898 (Fed.Cir.1985). However, in that case the court noted that to "actively induce" infringement requires "some purposeful action in furtherance of an actual infringement by another." *Id.* at 554. The court in EWP specifically found that the defendant "accepts orders and actively manufactures and delivers the infringing products.... These facts show purposeful, knowing, intentional acts which encourage and aid direct infringement by others." *Id.* This is a far cry from liability for an act of omission, as plaintiff would have the court find.

## 3. Infringement Under the Doctrine of Equivalents

■ Mid–America alleges that the accused device is so similar to the patented device as to infringe under the doctrine of equivalents. This doctrine finds infringement if the differ-

ences between the patented and accused products or processes are insubstantial. *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

■ Richwood replies that because the cover piece was added as an amendment to the '060 patent application and helped secure approval of the patent, Mid–America is estopped from accusing a device that lacks a cover piece. The doctrine of prosecution estoppel "limits the range of equivalents available to a patentee by preventing recapture of subject matter surrendered during prosecution of the patent." *Southwall* at 1579. The availability of estoppel depends on what was changed in the patent application and why it was changed. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 72 F.3d 857, 864 (Fed.Cir.1995); *Sun Studs, Inc. v. ATA Equipment Leasing, Inc.,* 872 F.2d 978, 987 (Fed.Cir.1989). Thus to be successful in estopping the infringement claim, Richwood would have to show that the cover piece was crucial to distinguishing the '060 patent from prior art and securing patent approval.

Because the scope of the doctrine of equivalents will likely be defined by the Supreme Court's decision in *Warner–Jenkinson Co. v. Hilton Davis Chemical Co.,* No. 95–728, discussed in United States Law Week, 65 LW 3197, I will await that decision before ruling on that issue unless the parties can provide compelling reason to rule earlier.

**B. Unfair Competition**

Count II of Mid–America's complaint alleges, in relevant part, "[u]pon information and belief, Richwood has now copied Tapco's plastic building wall mount assembly and has sold such copy ... for the express purpose of trading on Tapco's goodwill, and as an unfair means of competition." (Tapco is Mid–America's parent and a plaintiff in this lawsuit.) Mid–America alleges that this conduct violates 15 U.S.C. 1125(a), known as the Lan-ham Act. Section 43(a) of this Act provides civil liability for:

(1) "any person who ... uses in commerce any word, term name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval or his or her goods, services, or commercial activities by another person...."

To establish a violation of Section 43(a), the U.S. Court of Appeals for the Sixth Circuit has held that a plaintiff must prove by a preponderance of the evidence: (1) that the trade dress or product configuration of the two competing products is confusingly similar; (2) that the appropriated features of the trade dress or product configuration are primarily non-functional; and (3) that the trade dress or product configuration has obtained a secondary meaning.[2] *Esercizio v. Roberts,* 944 F.2d 1235, 1239 (6th Cir.1991); *Kwik–Site Corp. v. Clear View Mfg. Co., Inc.,* 758 F.2d 167, 178 (1985).

Richwood argues that a patented product cannot receive this kind of "trade dress" protection when the product's configuration is a significant inventive component of the product. *Vornado Air Circulation Systems v. Duracraft Corp.,* 58 F.3d 1498, 1510 (10th Cir.1995). As *Vornado* explains, this is so that when the patent expires, and the invention enters the public domain, competitors will be free to market it. *Vornado* at 1508. In other words, an inventor cannot permanently prevent others from reproducing her invention, which is what would happen if an inventive component were protected as "trade dress." This applies even when the configuration is non-functional, so long as it

2. The term "secondary meaning" has been explained as follows: "To acquire a secondary meaning in the minds of the buying public, an article of merchandise when shown to a prospective customer must prompt the affirmation, 'That is the article I want because I know its source,' and not the negative inquiry as to 'Who makes that article?' In other words, the article must proclaim its identification with the source, and not simply stimulate inquiry about it." *Esercizio v. Roberts,* 944 F.2d 1235, 1239 (6th Cir.1991) quoting *West Point Mfg. Co. v. Detroit Stamping Co.,* 222 F.2d 581, 595 (6th Cir.1955).

is an inventive component of the patent. *Id.* at 1510.

Richwood points to the patent claims and accompanying drawings and specifications, which it says demonstrate that configuration was an inventive component of the approved patent. Mid–America in turn asserts that the patent claims the functional aspects of the wall mount assembly, but not its non-functional configuration, and thus the product configuration should be protected under unfair competition principles.

Neither the Supreme Court nor the Sixth Circuit have explicitly adopted the *Vornado* analysis, and it is not necessary for me to decide now whether to do so. I also decline to decide at this juncture whether, assuming *Vornado* applies, product configuration was a significant inventive component of the '060 patent. Rather, I will withhold such decision until I rule on whether Mid–America may seek a remedy under the doctrine of equivalents.

### IV. Conclusion

Plaintiff has failed to show facts creating a material dispute of fact regarding literal patent infringement, inducement to infringe, or contributory infringement. Accordingly, those claims are hereby dismissed. Parties are requested to notify this court within two weeks whether or not they consent to postponing decision on summary judgment of plaintiff's claim of infringement under the doctrine of equivalents until the Supreme Court announces its decision in *Warner–Jenkinson Co. v. Hilton Davis Chemical Co.,* *supra.* I will rule on defendant's motion for summary judgment of plaintiff's claim of unfair competition at the time that I rule on infringement under the doctrine of equivalents.

**IT IS SO ORDERED.**