**MID-AMERICA BUILDING PRODUCTS CORPORATION, a DIVISION OF TAP-CO INTERNATIONAL CORPORATION, Plaintiff,**

v.

**RICHWOOD BUILDING PRODUCTS, INC., Defendant.**

Civil Action No. 95–72741.

United States District Court,
E.D. Michigan,
Southern Division.

July 15, 1997.

Jeffrey A. Sadowski, Stanley M. Erjavac, Harness, Dickey & Pierce, Troy, MI, for Plaintiff.

Gregory J. Lunn, Bruce Tittel, Wood, Herron & Evans, Cincinnati, OH, Susan Artinian, Jill M. Wheaton, Dan Wyllie, Dykema Gossett, Detroit, MI, for Defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

Plaintiff Mid–America Building Products Corporation ("Mid–America") sued defendant Richwood Building Products, Inc. ("Richwood") for patent infringement and unfair competition allegedly resulting from Richwood's production and sale of a plastic wall mounting assembly. I previously granted summary judgment for Richwood on Mid–America's claim of literal infringement, inducement to infringe, and contributory infringement. *Mid–America Building Products Corporation v. Richwood Building Products, Inc.*, No. 95–72741, —— F.Supp. —— [1996 WL 924770] (E.D.Mich., Oct. 23, 1996). I reserved decision on infringement under the doctrine of equivalents pending a decision of the United States Supreme Court which was expected to define the scope of that doctrine. That decision has now issued. *Warner–Jenkinson Co. v. Hilton Davis Chemical Co.*, —— U.S. ——, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997).

Having reviewed the *Warner–Jenkinson* decision and heard argument from the parties, I find that there is not sufficient evidence from which a jury could find infringement under the doctrine of equivalents as delineated by the Supreme Court, and therefore summary judgment is granted for defendant. Summary judgment is also granted for defendant on plaintiff's claim of unfair competition.

### I. Background

Mid–America claimed that Richwood had violated United States Patent No. 5,326,060 (the " '060 Patent") by the production and marketing of Richwood's Recess J–Block plastic wall mounting assembly. A full recitation of the facts is set forth in my earlier opinion. In brief outline, both devices are attached to the siding of a building and used to mount an outdoor electrical socket cover or faucet. The '060 Patent consists of one independent claim (Claim 1) and three dependent claims (Claims 2–4).

In finding there could be no literal infringement, the key difference I observed was that Mid–America's patent required the use of a separate cover piece "interposed between" the flange wall and the back wall of its bracket in all applications, which is not present in the Richwood device. Rather, when the accused device is used to mount electrical socket covers, its back wall is visible; when used to mount a faucet, it incorporates a hinged cover with a circular opening.

Thus because the accused device did not include every limitation set forth in the patent claims, I could find no literal infringement. *Southwall Technologies, Inc. v. Cardinal I.G. Co.*, 54 F.3d 1570, 1575 (Fed.Cir. 1995). This determination left unresolved plaintiff's allegation that the accused device infringed the patent under the doctrine of equivalents. I also declined to rule on the sufficiency of the evidence in support of plaintiff's unfair competition claim.

### II. Standard of Review

■ The appropriate standard of review was set forth in my earlier opinion:

> A patentee must prove infringement by a preponderance of the evidence. In patent cases, as in other cases, summary judgment may be granted "if the pleadings, depositions, answers to interrogato-

ries, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ. P. 56(c). "The motion of an accused infringer on the grounds of non-infringement of a patent may be granted where the patentee's proof is deficient in meeting an essential part of the legal standard for infringement." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed.Cir.1989).

The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for plaintiff. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989). If defendant carries its burden of showing insufficient evidence to support a charge, plaintiff must show that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 [106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265] (1986). A mere scintilla of evidence is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 [106 S.Ct. 2505, 2512, 91 L.Ed.2d 202] (1986).

*Mid–America, supra*, at 3.

### III. *Analysis*

■ A device which does not literally infringe a patent may nevertheless infringe under the doctrine of equivalents if the differences between the two products are insubstantial. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). The limits to what may be considered an "insubstantial" difference, and the extent to which a judge may decide this question, have been subject to differing interpretations, which the Supreme Court sought to clarify in its *Warner–Jenkinson* opinion.

The *Warner–Jenkinson* decision left in place the holding of the U.S. Court of Appeals for the Federal Circuit that infringement by equivalence is for a jury to decide. —— U.S. at ——, 117 S.Ct. at 1053. However, the Court noted that the usual summary judgment standards apply:

Where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment. See Fed.Rule.Civ.Proc. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986).... Of course, the various legal limitations on the application of the doctrine of equivalents are to be determined by the court, either on a pretrial motion for partial summary judgment or on a motion for judgment as a matter of law at the close of evidence and after the jury verdict.

*Id.* at —— n. 8, 117 S.Ct. at 1053 n. 8. The Court declined to choose between the "insubstantial differences" approach and the "triple identity" test, which focuses on "the *function* served by a particular claim element, the *way* that element serves the function, and the *result* obtained by that element." *Id.* at ——, 117 S.Ct. at 1054. In order to infringe under the triple identity test, a device must meet all three prongs, *i.e.* dissimilarity in any aspect will prevent equivalence. *Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 1425 (Fed.Cir.1989).

■ In one respect, though, the Court decisively narrowed the scope of the doctrine of equivalents as understood by many courts. The Court noted, "[T]he doctrine of equivalents, as it has come to be applied since *Graver Tank*, has taken on a life of its own, unbounded by the patent claims. There can be no denying that the doctrine of equivalents when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement." *Id.* at ——–——, 117 S.Ct. at 1048–49. To reconcile this apparent conflict, the Court adopted a narrower, element-by-element approach to finding equivalence:

Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole. It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.

*Id.* at ——, 117 S.Ct. at 1049. This is the test which I now apply to Richwood's product.

▮ As noted above and in my earlier opinion, the key difference between the patent and the allegedly infringing product is the cover piece. Mid–America insists that finding infringement would not "effectively eliminate" the cover piece element of its claim, but a plain reading of the claim indicates to the contrary.

Claim 1 of the '060 Patent sets forth in one element the existence of "a cover piece received within the flange wall of said flange member," and, set off separately as a new paragraph, specifies, "said cover piece being interposed between said flange wall of said flange member and said back wall of said bracket." In other words, the requirement that the cover piece be "interposed" between the flange wall and the back wall appears to be a separate element of the claim. To find equivalence would plainly eliminate that element of the patent, which I am not free to do.

Even looking at the '060 cover piece as a whole, it is clear that a jury could not find this element equivalent under either the "insubstantial differences" or "triple identity" test. The '060 Patent identifies as one problem with past wall mounting brackets that "both the front wall of the mounting bracket and the flange member are visible making color coordination with the siding more difficult and costly." '060 Patent, column 1, lines 26–28. The new patent solves this problem: "In use, only the flange member is visible thus allowing the bracket member to be made of a less expensive material, of a different color such that color coordination with the siding is easier and less costly...." '060 Patent, column 1, lines 54–57. Richwood's device differs in at least the way it operates and the result it achieves. It does not operates in the same way because it does not interpose or trap a cover piece between the flange wall and the back wall. And it achieves a different result, because it does not eclipse the back wall of the bracket—a result highlighted in the '060 Patent itself.

▮ Even if it were possible to find equivalence, Mid–America's claim would be barred by the doctrine known as prosecution history estoppel or file wrapper estoppel. This doctrine holds that a patent holder may not recapture subject matter surrendered during prosecution of the patent. *Southwall Technologies, Inc. v. Cardinal I.G. Co.*, 54 F.3d 1570, 1579 (Fed.Cir.1995). Thus where a patent application is amended in order to secure approval by distinguishing the patented invention from prior art, the patent holder may not later claim infringement by a device that lacks this distinction. The *Warner–Jenkinson* decision reaffirms that estoppel turns on the reason for the amendment. —— U.S. at ——, 117 S.Ct. at 1050. The burden is on the patent holder to establish that the amendment was not made in order to distinguish prior art. *Id.* at ——, 117 S.Ct. at 1051.

▮ After its initial patent application was rejected Mid–America sought reconsideration, amending its application to include the interposed cover piece. Mid America's counsel stated to the Patent Office, "It is respectfully submitted that Vagedes [the relevant prior art] neither discloses nor suggests such a plastic cover. Accordingly, nothing in Vagedes would disclose or suggest to a person skilled in the art doing what the applicants have done. No art has been shown with such a cover." Remarks submitted by B.C. Foussianes, October 18, 1993. Mid–America is therefore estopped from claiming infringement by a device lacking such a cover piece.

▮ Finally, Mid–America's unfair competition claim fails as well. This claim is controlled by the Lanham Act, 15 U.S.C. 1125(a). That law provides civil liability for:

(1) "any person who ... uses in commerce any word, term name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."

A plaintiff claiming liability under this statute must show (1) that the trade dress or product configuration of the two competing products is confusingly similar; (2) that the appropriated features of the trade dress or product configuration are primarily non-functional; and (3) that the trade dress or product configuration has obtained a secondary meaning. *Esercizio v. Roberts*, 944 F.2d 1235, 1239 (6th Cir.1991) *cert. den.* 505 U.S. 1219, 112 S.Ct. 3028, 120 L.Ed.2d 899 (1992); *Kwik–Site Corp. v. Clear View Mfg. Co., Inc.*, 758 F.2d 167, 178 (6th Cir.1985). The product configuration of Richwood's device is clearly functional and so there can be no unfair competition.

Additionally, there is legal support for the notion that because the wall mount assembly's configuration is a significant inventive component of the '060 Patent, Mid–America may not also seek to protect this configuration through an unfair competition claim as well as a patent claim. *Vornado Air Circulation Systems v. Duracraft Corp.*, 58 F.3d 1498, 1510 (10th Cir.1995), *cert. den.* — U.S. ——, 116 S.Ct. 753, 133 L.Ed.2d 700 (1996). As more fully explained in my earlier opinion, the U.S. Court of Appeals for the Tenth Circuit has adopted this rule of law so that product configurations which are patented as inventions may be freely marketed when the patent expires, rather than protected under two different doctrines. *Vornado* at 1508. This is so even when the configuration is non-functional. *Id.* at 1510. The configuration of the wall mount assembly is so clearly an inventive component of the '060 Patent that it bears no further discussion here. Even if the U.S. Court of Appeals for the Sixth Circuit declines to adopt the *Vornado* rule, the functional nature of the configuration bars an unfair competition claim.

■ Neither has Mid–America presented evidence that its product has acquired a secondary meaning, such that a customer would seek out the product because the customer knows of the source. The product must "proclaim its identification with the source, and not simply stimulate inquiry about it." *Esercizio*, 944 F.2d at 1239 (quoting *West Point Mfg. Co. v. Detroit Stamping Co.*, 222 F.2d 581, 595 (6th Cir.1955)).

### Conclusion

For the above reasons, defendant's motion for summary judgment is granted in its entirety.

IT IS SO ORDERED.