Anthony John ANTONIOUS, Plaintiff,

v.

SPALDING & EVENFLO COMPANIES, INC., et al., Defendants.

No. Civ.A. MJG–97–1958.

United States District Court, D. Maryland.

May 29, 1998.

Carol Peacock Einaudi, Finnegan, Henderson, Farabow, Garrett and Dunner, Washington, DC, James E. Gray, Goodell, DeVries, Leech & Gray, Baltimore, MD, Richard L. Stroup, Finnegan, Henderson, Farabow, Garrett and Dunner, Washington, DC, Michael B. MacWilliams, Baltimore, MD, Robert L. Burns, Finnegan, Henderson, Farabow, Garrett and Dunner, Washington, DC, for Anthony John Antonious.

Morton A. Sacks, McGuire, Woods, Battle & Boothe, Baltimore, MD, Christopher B. Fagan, Fay, Sharpe, Beall, Fagan, Minnich & McKee, Cleveland, OH, Ronald M. Cherry, McGuire, Woods, Battle & Boothe, LLP, Baltimore, MD, Richard M. Klein, Fay Sharpe Beall Fagan Minnich, & McKee, Cleveland, OH, for Spalding & Evenflo Companies, Inc.

Morton A. Sacks, Ronald M. Cherry, McGuire, Woods, Battle & Boothe, LLP, Baltimore, MD, for Spalding Sports Worldwide.

### MEMORANDUM AND ORDER RE INFRINGEMENT OF UTILITY PATENTS

GARBIS, District Judge.

The Court has before it Defendants' Motion for Summary Judgment of Non–Infringement of U.S.Patent No. B1 5,328,184, Plaintiff's Cross–Motion for Partial Summary Judgment and Opposition to Defendants' Motion for Summary Judgment Regarding Infringement of U.S.Patent No. 5,328,184, Defendants' Motion for Summary Judgment of Non–Infringement of U:S.Patent No. 5,482,279, Plaintiff's Cross–Motion for Partial Summary Judgment and Opposition to Defendants' Motion for Summary Judgment Regarding Infringement of U.S.Patent No. 5,482,279, and the materials submitted relating thereto. The Court has held a hearing and had the benefit of the arguments of counsel.

### I. SUMMARY JUDGMENT

A motion for summary judgment shall be granted if the pleadings and supporting documents "show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party

seeking summary judgment "has the burden of showing the absence of any genuine issue of material fact and that he is entitled to judgment as a matter of law." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984).

In sum, the Court must look at the evidence presented in regard to the motion for summary judgment through the non-movant's rose colored glasses, but must view it realistically. After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law. And, of course, summary judgment in a patent case is determined on the same principles as in other civil litigation. *Townsend Engineering Co. v. HiTec Co., Ltd.*, 829 F.2d 1086, 1089 (Fed.Cir.1987).

## II. *THE INFRINGEMENT DETERMINATION*

■ Determining whether a patent claim has been infringed is a two-step process. In both of these steps, the patent owner has the burden of establishing infringement by a preponderance of the evidence. *See SmithKline Diagnostics Inc. v. Helena Laboratories Corp.*, 859 F.2d 878, 889 (Fed.Cir.1988); *Lemelson v. United States*, 752 F.2d 1538, 1547 (Fed.Cir. 1985).

■ At the first stage of the analysis, "the claim must be properly construed to determine its scope and meaning." *Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.*, 15 F.3d 1573, 1576 (Fed.Cir. 1993). In this case, the Court has, pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 1396, 134 L.Ed.2d 577 (1996), construed the claims at issue.

At the second stage of the analysis, "the claim as properly construed must be compared to the accused device or process." *Carroll Touch*, 15 F.3d at 1576.

As stated in *Johnston v. IVAC Corp.*, 885 F.2d 1574 (Fed.Cir.1989):

To establish infringement of a patent, every limitation set forth in a claim must be found in an accused product or process exactly [that is, for literal infringement] or by a substantial equivalent [that is, for infringement by equivalents]. Thus, the accused infringer, IVAC, is entitled to summary judgment, on the ground of non-infringement, by pointing out that the patentee failed to put forth evidence to support a finding that a limitation of the asserted claim was met by the structure in the accused devices.

*Id.* at 1577–78 (citations omitted).

### A. *Literal Infringement*

■ A patent claim is infringed if the accused device embodies every element of the claim as properly interpreted. *See Texas Instruments, Inc. v. U.S.I.T.C.*, 805 F.2d 1558, 1562 (Fed.Cir.1986).

### B. *The Doctrine of Equivalents*

■ In *Warner–Jenkinson, Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997), the Supreme Court reaffirmed the validity of the doctrine of equivalents. Under this doctrine, a product which does not literally infringe upon the express terms of a patent may nonetheless infringe if there is "equivalence" between the elements of the accused product and the claimed elements of the patent.

The Supreme Court in *Warner–Jenkinson* adopted the views expressed by former Chief Judge Nies of the Federal Circuit in her dissent in *Hilton Davis Chem. Co. v. Warner–Jenkinson Co.*, 62 F.3d 1512 (Fed.Cir.1995), *rev'd*, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). As stated by the Supreme Court:

We do, however, share the concern of the dissenters below that the doctrine of equivalents, as it has come to be applied since *Graver Tank* [*Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950)], has taken on

a life of its own, unbounded by the patent claims. There can be no denying that the doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement. Judge Nies identified one means of avoiding this conflict:

"[A] distinction can be drawn that is not too esoteric between substitution of an equivalent for a component *in* an invention and enlarging the metes and bounds of the invention *beyond* what is claimed.

\*     \*     \*     \*     \*     \*

"Where a claim to an invention is expressed as a combination of elements, as here, 'equivalents' in the sobriquet 'Doctrine of Equivalents' refers to the equivalency of an *element* or *part* of the invention with one that is substituted in the accused product or process.

\*     \*     \*     \*     \*     \*

"This view that the accused device or process must be more than 'equivalent' *overall* reconciles the Supreme Court's position on infringement by equivalents with its concurrent statements that 'the courts have no right to enlarge a patent beyond the scope of its claims as allowed by the Patent Office.' [Citations omitted] The 'scope' is not enlarged if courts do not go beyond the substitution of equivalent elements." 62 F.3d, at 1573–1574 (Nies, J., dissenting) (emphasis in original).

We concur with this apt reconciliation of our two lines of precedent. Each

element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole. It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.

*Warner–Jenkinson,* 117 S.Ct. at 1048–49.

■ As the Federal Circuit has noted in decisions rendered after *Warner–Jenkinson,* a claim element can be found to be equivalently present in an accused product "if only 'insubstantial differences' distinguish the missing claim element from the corresponding aspects of the accused device." [1] *Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1423 (Fed.Cir.1997).

The Supreme Court made clear in *Warner–Jenkinson* that usual summary judgment standards apply to the factual determinations relating to infringement by equivalents. As stated by the Court:

> Where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment. If there has been a reluctance to do so by some courts due to unfamiliarity with the subject matter, we are confident that the Federal Circuit can remedy the problem.

*Warner–Jenkinson,* 117 S.Ct. at 1053 n. 8 (citations omitted).[2]

---

1. The Supreme Court in *Warner–Jenkinson* expressly declined to choose between the "triple identity" test, by which one focuses on the function served by a particular element, the way that element serves that function, and the result thereby obtained, and the "insubstantial differences" approach for determining equivalence. The Court noted that while the triple identity test may be appropriate for analyzing mechanical devices, "it often provides a poor framework for analyzing other products or processes." *Warner–Jenkinson,* 117 S.Ct. at 1054. In the Court's view, the essential inquiry, irrespective of the particular linguistic formulation, is: "Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention." *Id.* The Court left it to the Federal Circuit to refine the formulation of the test for equivalence on a case-by-case basis. *Id.*

2. The Supreme Court expressly declined to decide whether, or the extent to which, the judge (rather than the jury) is to apply the doctrine of equivalents. However, it let stand the Federal Circuit's holding that the issue of whether there is infringement under the doctrine of equivalents is a jury question. *Warner–Jenkinson,* 117 S.Ct. at 1053.

## III. *THE '184 PATENT*

### A. *INTRODUCTION*

In this case, Plaintiff sues Defendants Spalding & Evenflo Companies, Inc. ("Spalding") for infringement of claims 1, 4, 5, 9, 12, 17, 18, 19, and 24 of U.S.Patent 5,328,184 ("the '184 Patent").

The '184 Patent was granted for an alleged invention concerning iron-type golf club heads. The patent discloses golf iron heads with the usual flat striking surface having a rear cavity surrounded by a peripheral mass and a single weight bar as illustrated by Figures 1 and 3 of the patent:

FIG. 1

FIG. 3

According to the patent disclosure, the placement of the weight bar improves the transfer of energy to a golf ball when struck. The patent also discloses a set of golf clubs with different placements of the weight bar for each of the differently lofted irons.

Spalding manufactures the accused products at issue. These include the Tour Edition and Top Flite Tour irons, which, generally[3], appear as follows:

As discussed herein, Spalding seeks summary judgment on the issue of noninfringement by virtue of the absence of an element common to each claim at issue.[4] To wit, each claim at issue includes as a limitation that the club head comprises, among other things, "a single weight member *formed on and attached solely to the rear wall* within [the] cavity [behind the striking surface]." This Court has held that:

The phrase "formed on and attached solely to said rear wall within said cavity" is construed to mean that the weight member must be attached solely (i.e. only) to the rear wall (back side of the striking surface) and not attached also to the peripheral mass within the cavity.

Memorandum and Order Re Patent Claim Construction at 22.

---

3. The variations among the accused products are not material to the instant discussion.

4. Independent claims 1, 18, and 24 expressly include the limitation. The dependent claims all include the limitation by reference to the respective independent claims.

## B. Literal Infringement

In this case, there is no dispute as to the accused products. In every one of them, the single weight member is integral with, and attached to, the peripheral mass of the club. Accordingly, there is no weight member "attached solely (i.e. only) to the rear wall (backside of the striking surface) and not attached also to the peripheral mass." Accordingly, there is no literal infringement of the '184 patent.

## C. Infringement By the Doctrine of Equivalents

■ The claims at issue include as an element the limitation that the single weight member be "formed on and attached solely to the rear wall." This language has been construed to mean that the weight member is not attached to the peripheral mass, but only to the rear wall. In all of the accused devices, the weight member is attached to the peripheral mass as well as the rear wall.

The essence of infringement by equivalents is a determination that, as to each element of the claim for which there is not literal infringement, there is only an insubstantial difference between the accused device and the patent claim. This Court concludes that no reasonable jury could find there to be equivalence with regard to the element of attachment *only* to the rear wall. Plaintiff seeks to, but will not be permitted to, remove from the claim a limitation that he placed therein.

In *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420 (Fed.Cir.1997), the Federal Circuit affirmed the district court's entry of summary judgment based upon a finding of non-infringement. At issue in *Sage* was a patent for a hazardous medical waste disposal container. The claims at issue called for a disposal container comprising "an elongated slot *at the top of the container body.*" *Sage*, 126 F.3d at 1422 (emphasis added). In addition, the patent claimed a "barrier means disposed adjacent said slot ... comprising ... a first constriction *extending over said slot.*"

*Id.* (emphasis added). The Federal Circuit agreed with the district court that the phrase "top of the container body" meant "the highest point, level, or part of" the container and that the phrase "extending over said slot" required that the first constriction be "above" the slot. *Id.* at 1422–23. Because the accused products did not contain these elements, the district court properly held that there was no literal infringement. *Id.* at 1423.

The Federal Circuit also affirmed the district court's entry of summary judgment based on the doctrine of equivalents. While the patentee presented a variety of theories of equivalence, they each suffered "from one of two alternative problems— either the elongated slot is not substantially 'at the top of the container body' or there is no first constriction that extends substantially 'over said slot.'" *Id.* at 1424. The Federal Circuit rejected the patentee's argument that the claimed and accused arrangements of the product "accomplish substantially the same function, in substantially the same way, to achieve substantially the same result." *Id.* Rather, the Court held that "the doctrine of equivalents does not grant Sage license to remove entirely the 'top of the container' and 'over said slot' limitations from the claim." *Id.* (citing *Warner–Jenkinson*, 117 S.Ct. at 1049); *see also Mid–America Bldg. Prods. Corp. v. Richwood Bldg. Prods., Inc.*, 970 F.Supp. 612, 615 (E.D.Mich.1997) (granting summary judgment against patentee on doctrine of equivalents when a finding of equivalence would eliminate the requirement in the patent that a cover piece be interposed between a flange wall and a back wall of a wall mounting bracket).

Plaintiff's equivalents argument in the instant case has the same deficiencies that the Federal Circuit found in *Sage*. In the case at bar, the pertinent claim limitation expressly requires that the weight member be attached *only* to the rear wall of the club head cavity. In the accused devices, the weight is plainly, substantially, and

solidly attached to the peripheral mass. To find equivalence in this circumstance would thus remove entirely the limitation that the weight member be "formed on and attached solely to" the rear wall of the cavity. In no way could a reasonable fact finder conclude that the accused devices have a weight member construction substantially similar to a club which would have the weight attached *only* to the rear wall.

The Court notes that the Federal Circuit's inquiry in *Sage* was whether or not the accused product substantially contained "an elongated slot at the top of the container body," not merely whether it substantially contained an elongated slot. Furthermore, the Federal Circuit examined whether there was substantially "a first constriction extending over said slot," not simply whether the accused device had a first constriction. Likewise, in the instant case, the Court's focus is on whether the accused golf clubs could be said to substantially contain a weight member *attached solely to the rear wall* of the cavity, not merely whether the Spalding clubs contain a weight member. As discussed above, no reasonable fact finder could conclude that the accused products contain only insubstantial differences from the claimed elements of Plaintiff's '184 patent.

As the Federal Circuit noted in *Sage*, "for a patentee who has claimed an invention narrowly, there may not be infringement under the doctrine of equivalents in many cases, even though the patentee might have been able to claim more broadly. If it were otherwise, then claims would be reduced to functional abstracts, devoid of meaningful structural limitations on which the public could rely." *Sage*, 126 F.3d at 1424. That is precisely the situation in the instant case. Plaintiff may or may not have been able to have claimed more broadly. For whatever reason, he did not. As made clear by the Federal Circuit in *Sage*, Plaintiff may not now use the doctrine of equivalents to remove meaningful structural limitations from his claims.

■ The Court notes that Spalding argues that even if a jury could find substantial equivalence, Plaintiff would be barred from asserting the doctrine of equivalents due to "prosecution history estoppel." This is, essentially, a doctrine that states that a patentee cannot rely upon a claim limitation to the Patent Office as a ground for distinguishing prior art and then seek to have the limitation disregarded through the doctrine of equivalents. *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562 (Fed.Cir.1991) (claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers); *see also Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 900 (Fed.Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984).

■ When a court applies the doctrine of prosecution history estoppel to limit the scope of the doctrine of equivalents, "a close examination must be made as to not only what was surrendered, but also the reason for such a surrender." *Southwall Technologies, Inc. v. Cardinal I.G. Co.*, 54 F.3d 1570, 1580 (Fed.Cir.), *cert. denied*, 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995) (quoting *Hi–Life Products, Inc. v. American Nat'l Water–Mattress Corp.*, 842 F.2d 323, 325 (Fed.Cir.1988)). In *Southwall*, the court determined that the patentee's surrender was quite "deliberate and express" for the purpose of distinguishing the prior art. *Id.*

Spalding appears to have a solid argument with regard to prosecution history estoppel. However, the Court need not rely upon this ground since it concludes that no reasonable fact finder could find the equivalence that Plaintiff asserts.

Accordingly, Spalding is entitled to summary judgment with regard to the claim of infringement of the '184 Patent.

## IV. THE '279 PATENT

Plaintiff sues Spalding for infringement of claims 1–5, 8, 11, 17, 32, 40–42, 49, and 50 of U.S.Patent 5,482,279 ("the '279 Patent").

The '279 Patent was granted for an alleged invention concerning wood type golf club heads. The disclosed club heads have a striking surface with a peripheral mass and a hosel integrally connected to the club head body as shown by Figure 11 of the Patent:

FIG. 11

According to the patent disclosure, the placement of the peripheral mass and hosel adds strength and stability to the club head and minimizes pinging when the ball is struck.

Spalding manufactures the accused products at issue. These include certain of the Top–Flite Intimidator woods.[5]

The claims asserted by Plaintiff fall into two groups. These are (A) The Claim 1 Group (Independent Claim 1 and Dependent Claims 2–5, and 8) and (B) The Claim 13 Group (Dependent Claims 17, 32, 40–42, 49, and 50). Spalding contends that the accused products lack an element of each of independent claims 1 and 13. Therefore, there is no infringement of the independent claims and/or any claim depending therefrom[6].

### A. The Claim 1 Group

Claim 1 (and its dependent claims by reference) include as a limitation that the club head comprises, among other things:

a peripheral mass positioned along at least the majority of the interface of the ball striking face and the crown of the club head, wherein the *hosel extends into and connects with a portion of said peripheral mass*, thereby providing added strength and stability to the club head and minimizing pinging of the club head when ball contact is made.

Spalding contends that none of the accused products have a hosel which extends into and connects with a portion of the peripheral mass.

---

5. Plaintiff does not contend that the Intimidator 400 series woods infringe the '279 Patent.

6. Plaintiff's argument that dependent Claim 32 can be held infringed even though its independent Claim, 13, is not infringed is discussed herein.

### 1. *Literal Infringement*

■ There are variations among the accused devices with regard to the relationship between the hosel and the peripheral mass. For purposes of this discussion, the Court is considering that variation which is most favorable to the Plaintiff. Since even this variation does not infringe, *a fortiori*, none of the accused products infringe.

The hosel and peripheral mass[7] relationship is shown by the following picture of the inside of the club head:

It can be seen that the hosel cylinder extends through the shell of the club and touches the peripheral mass. However, the hosel does not extend into the peripheral mass. The hosel's tangentially touching the peripheral mass does not constitute extending into the peripheral mass. Rather, the essence of the alleged invention, the extension of the hosel into the peripheral mass, is illustrated, for example, by Figure 11 of the Patent. No reasonable juror could find that the accused devices have a hosel that extends into the peripheral mass. Accordingly, there is no literal infringement of the Claim 1 Group of claims.

### 2. *Infringement by the Doctrine of Equivalents*

As discussed above with regard to the '184 Patent, summary judgment can be appropriate on a contention that there has been infringement by the doctrine of equivalents.

■ In this instance, even if Plaintiff would be entitled to assert the doctrine of equivalents, the doctrine would not be applicable to reach the accused products. The pertinent limitation is a hosel extending into the peripheral mass. There is a substantial difference between a hosel which only tangentially touches the periph-

7. Plaintiff's position, which is accepted for the purpose of this discussion, is that the flange into which the striking face fits and the mate-

rial behind the flange and next to the crown of the club constitutes a peripheral mass.

eral mass (as in the accused products) and one which would extend into it.

■ The Court further concludes that Plaintiff is estopped from asserting the doctrine of equivalents in regard to the hosel and peripheral mass relationship at issue. Plaintiff had presented to the Patent Office an original Claim 1 which omitted the "extends into" language so as to read on a device in which the hosel was "integrally connected to the . . . club head body." The examiner stated that the prior art disclosed a golf club head construction including a hosel which is integrally connected to the club head body. However, as noted by the examiner, "the prior art lacks the teaching for a hosel which extends into and connects with the peripheral mass."

Original claim 6 (issued claim 1) was dependent from original claim 1 and included the limitation that the hosel extend into and connect with the peripheral mass. The examiner allowed original claim 6 (issued claim 1) if rewritten in independent form including the limitations of original claim 1. Therefore, Plaintiff abandoned original claim 1 and substituted for it original claim 6. Thus, Plaintiff added to the limitations originally sought the limitation that the hosel extends into and connects with a portion of the peripheral mass.

Plaintiff contends that there can be no prosecution history estoppel because he did not amend original claim 6.. That may be literally so. However, the reality is that the Plaintiff asserted a claim for a hosel which was integral with the club body and did not, necessarily, have to extend into the peripheral mass. He abandoned that coverage and limited his claim to hosels which extended into the peripheral mass. He cannot now seek to read this limitation out of the claim. In any event, even if the Plaintiff were not estopped, the Court finds that he could not prevail on his doctrine of equivalents contentions.

## B. *The Claim 13 Group*

Claim 13 (and its dependent claims) include as a limitation that the club head has a frontal body section and a rearward shell attached to said frontal body section at the interface of said frontal body section and said rear shell.

This Court has held:

The words "said club head body having a frontal body section and a rearward shell attached to said frontal body section at the interface of said frontal body section and said rear shell" are construed to impose the limitation that the club have two sections which are attached, the frontal section comprising the ball striking face, the rear club face and a peripheral mass and the rearward section being a shell.

This limitation is well illustrated by Figure 11 of the patent. Essentially, the club head disclosed in Figure 11 is an iron to which a rear shell (filled with appropriate material) is attached.

### 1. *Literal Infringement*

■ By no stretch of the imagination do the accused products have a frontal body section attached to a rearward shell. The accused devices are composed of a solid body of a single material with a flange ("picture frame") in front into which a striking face is inserted and a sole plate is attached to the bottom. There is no literal infringement of the Claim 13 Group of claims.

### 2. *Doctrine of Equivalents*

■ Plaintiff has presented no competent evidence that there could be infringement of the Claim 13 Group of claims under the doctrine of equivalents. The conclusions of an expert and/or inventor are of no consequence absence a basis in fact and analysis. A bare, mantra-like, recitation of general principles is simply inadequate.

To support the claim of infringement by equivalents, Mr. Antonious provides his own statement that:

[i]f any differences are found between my claims, as construed by the Court, and each of these accused club heads, it is my further opinion that the designated infringing club heads infringe each of the above designated claims under the doctrine of equivalents. I am unaware of any substantial differences between my invention defined by these claims and the designed Spalding club heads.

Antonious Declaration ¶ 60. Mr. Antonious' declaration is entirely conclusory and would not be admissible in evidence. Most definitely it is inadequate (with all of the evidence in the case) to present a genuine issue of material fact as to infringement by the doctrine of equivalents. Mr. Antonious provides no explanation of the facts or analysis underlying his opinion. Furthermore, he does not specifically address in any way how the accused clubs could be considered to be substantially equivalent to a club having a frontal body section attached to a rearward shell.

Plaintiff's expert, Robert L. Harmon, has submitted a declaration which is even more conclusory than that of Mr. Antonious. Mr. Harmon concedes that the ultimate inquiry under the doctrine of equivalents is whether the difference between an element of the patent claim and an element of the accused product is a substantial one from the perspective of a person of ordinary skill in the art. Harmon Declaration ¶ 58. Mr. Harmon cites to Mr. Antonious as a person of ordinary skill in the art and then baldly states that Mr. Antonious' conclusions are consistent with his own. *Id.* Similarly, in paragraph 65 of his Declaration, Mr. Harmon adopts the "technical support" provided in Mr. Antonious' Declaration as support for his adoption of Mr. Antonious' ultimate conclusion that there is infringement by equivalents. As noted above, however, Mr. Antonious has not provided any "technical support" which specifically addresses the limitation currently at issue. There is no analysis of how the accused products could be said to be substantially equivalent to a club having a frontal body section attached to a rearward shell.

The Court concludes that Plaintiff has not presented any evidence from which a reasonable fact finder could conclude that the construction of the accused products is substantially equivalent to a club head comprising a frontal section and an attached rearward shell. There is no evidence from which a reasonable fact finder could conclude that the essential function, way, and result of attaching a shell to what amounts to an iron is the equivalent of the construction of the accused products.

Finally, Plaintiff argues that dependent claim 32 can be, and is, infringed by the doctrine of equivalents even though the independent claim 13 from which it depends is not infringed. Plaintiff relies upon his counsel's reading of *Wilson Sporting Goods v. David Geoffrey & Assoc.,* 904 F.2d 677 (Fed.Cir.1990). As noted in *Wilson Sporting Goods,* the general rule is that "dependent claims cannot be found to be infringed unless the claims from which they depend have been infringed." *Id.* at 685, (quoting *Wahpeton Canvas Co., Inc. v. Frontier, Inc.,* 870 F.2d 1546, 1553 & n. 9 (Fed.Cir.1989)). The general rule is not applicable in an infringement by equivalents analysis in the particular situation found in *Wilson Sporting Goods.* There, the jury could have concluded that the equivalents "reach" of the independent claim would not cover the accused product because of the prior art. However, the dependent claim could "reach" the accused product because the additional limitations would cause the "hypothetical claim" used for equivalents purposes to fail to read on the prior art. In the case at bar, the *Wilson Sporting Goods* situation is not present. The independent claim is not infringed because there is a substantial difference between what is claimed and the accused products. The substantial difference is not eliminated or reduced by the additional limitation in dependent claim 32. Accordingly, the *Wilson Sporting Goods* precedent does not

provide a basis for the Plaintiff to avoid summary judgment.

## V. CONCLUSION

For the foregoing reasons:

1. Defendants' Motion for Summary Judgment of Non–Infringement of U.S.Patent No. 5,328,184 is GRANT-ED.

2. Defendants' Motion for Summary Judgment of Non–Infringement of U.S.Patent No. 5,482,279 is GRANT-ED.