Uraseal, Inc. v. Electric Motion Co.  CV-95-517-SD 02/11/98

UNITED STATES DISTRICT COURT FOR THE

                      DISTRICT OF NEW HAMPSHIRE


<u>Uraseal, Inc.</u>


     v.                              Civil No. 95-517-SD


<u>Electric Motion Company, Inc.</u>



                         O R D E R


     In this patent infringement action, plaintiff Uraseal, Inc.,

alleges that defendent Electric Motion Company, Inc., is

manufacturing and marketing ground clamps ("EMC ground clamps")

that infringe United States Letters Patent No. 4,842,530 (the

'530 patent) owned by Uraseal.  Before the court is defendant's

motion for summary judgment, to which plaintiff objects.



                         <u>Facts</u>

     In June 1989, the '530 patent issued to three inventors for

an invention entitled "Electrical Floating Bond Assembly."  The

floating bond, as the invention is commonly called in the

telecommunications industry, provides a floating electrical and

mechanical connection between a grounding bolt or stud and the

metallic sheath of a telephone cable or buried service wire.

Uraseal acquired all rights to the '530 patent.

Defendant began manufacturing and marketing the EMC ground clamp, which served essentially the same function as the device described in the '530 patent. Nonetheless, the EMC ground clamp utilized different parts.

Discussion

The determination of whether an accused product or process infringes a claim in a patent is universally understood to involve two steps. First, the court construes the claim asserted to be infringed to determine its meaning and scope. Tanabe Seiyaku Co. v. U.S. Int'l Trade Comm'n, 109 F.3d 726, 731 (Fed. Cir. 1997). Second, the court compares the properly construed claim to the accused product or process. Id. In order to establish infringement, every limitation of the patent claim asserted must be found in the accused product, either literally or under the doctrine of equivalents, which extends patent protection beyond the literal terms of the claim to cover equivalent elements. Sage Products v. Devon Indus., 126 F.3d 1420, 1423 (Fed. Cir. 1997). Judge Learned Hand wrote, "[A]fter all aids to interpretation have been exhausted, and the scope of the claims has been enlarged as far as the words can be stretched, on proper occasions courts make them cover more than their meaning will bear." Royal Typewriter Co. v. Remington

2

Rand, Inc., 168 F.2d 691, 692 (2d Cir.), cert. denied, 335 U.S. 895 (1948).

Plaintiff Uraseal must rely on the doctrine of equivalents to establish infringement because some of the literal limitations of Uraseal's patent claim are missing from the EMC ground clamp. First, the patent claims "an . . . axially slotted externally-threaded bolt which slot is open at one end thereof corresponding to the threaded end of the bolt." Second, the patent claims "a nut threadingly engaging said threaded bolt." Instead of an externally threaded bolt, the EMC ground clamp includes a U-shaped yoke having a pair of legs with opposed interior thread surface. Instead of a nut, the EMC clamp has a keeper, which has a smooth interior surface that fits around the smooth exterior surface of the yoke and is guided up the yoke by an independently turning bolt that engages the threads on the interior of the yoke's legs. In sum, the patented device has a bolt and a nut, while the accused device has a yoke and a keeper.

Nonetheless, Uraseal argues that the yoke and keeper of the EMC ground clamp are equivalent to the nut and bolt of the patent claim. The doctrine of equivalents recognizes that "to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing." Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 607 (1950). The Court

3

said, "Such a limitation would leave room for--indeed encourage-- the unscrupulous copyist to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law." Id.; see also MERGES, ROBERT PATRICK, PATENT LAW AND POLICY 659 (1992). The test for equivalents is whether only "insubstantial differences" distinguish an element of the accused device from the corresponding element in the patent claim. Hilton Davis Chem. Co. v. Warner-Jenkinson Co., 62 F.3d 1512, 1517 (Fed. Cir. 1995) (in banc) ("The Supreme Court . . . thus made insubstantial differences the necessary predicate for infringement under the doctrine of equivalents."), rev'd on other grounds, ___U.S. ___, 117 S. Ct. 1040 (1997). However, the Supreme Court has recently reminded courts that applying the doctrine of equivalents too broadly expands the rights of the inventor beyond any reasonable interpretation of the claim thereby undermining the "definitional and public-notice functions of the statutory claiming requirements." Warner-Jenkinson Co. v. Hilton Davis Chem., ___ U.S. ___, ___, 117 S. Ct. 1040, 1049 (1997). Justice Black in Graver Tank, supra, fully discussed the unfairness that would result to the public under too broad a reading of the doctrine of equivalents. He said,

4

> Hereafter a manufacturer cannot rely on what the language of a patent claims. He must be able, at the peril of heavy infringement damages, to forecast how far a court relatively unversed in a particular technological field will expand the claim's language after considering the testimony of technical experts in that field.

Graver Tank, 339 U.S. at 617. Subsequent to the Court's opinion in Warner-Jenkins, supra, a lower court interpreted the Supreme Court as having "decisively narrowed the scope of the doctrine of equivalents as understood by many courts . . . ." Mid-America Building Products Corp. v. Richwood Building Products, Inc., 970 F. Supp. 612, 614 (E.D. Mich. 1997). Thus, in applying the doctrine of equivalents, courts must balance the competing policies of avoiding fraud on patents on the one hand, and avoiding undermining the public-notice functions of the statutory claiming requirement on the other.

In this case, holding the yoke and keeper to be equivalent to the nut and bolt would be unfair to the public. The doctrine of equivalents is particularly unfair to the public when stretched to cover foreseeable substitutions for the limitations of the patent claim. In such a case, the inventor could have defined the original patent claim in terms broad enough to include such foreseeable substitutions, but instead chose to define the claim more narrowly. Thus, "[A]s between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must

bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure." Sage Products, supra, 126 F.3d at 1425. For instance, in Tanabe Seiyaku Co., supra, 109 F.3d at 732, the inventor defined his invention using acetone, which is a category of ketone solvents. The accused invention used butanone, another category of ketone solvents. The court rejected the inventor's claim that butanone was equivalent to acetone, because "[a] person skilled in the art would know that [the inventor] could have used the term 'lower alkyl ketone' to describe a class of ketone solvents including [both] butanone and acetone." Id. Since the inventor chose to define the claim narrowly as only acetone, it was impermissible to erase "meaningful limitations of the claim on which the public is entitled to rely in avoiding infringement." Id. Likewise, the court in Sage Products said,

> The claim at issue defines a relatively simple structural device. A skilled patent drafter would foresee the limiting potential of the [language used in the claim]. No subtlety of language or complexity of the technology, nor any subsequent change in the state of the art, such as later-developed technology, obfuscated the significance of this limitation at the time of its incorporation into the claim.

Sage Products, supra, 126 F.3d at 1425. Because the inventor easily could have drafted his claim more broadly, it was thus unfair to broaden his patent protection under the doctrine of equivalents.

6

In this case, substitution of a yoke and keeper for the nut and bolt was both foreseeable and foreseen by the inventors. Erickson Affidavit ¶ 15 (attached to plaintiff's objection to defendant's motion for summary judgment). The inventors could have sought broader patent protection, but they specifically limited their claim to "an externally threaded bolt" and "a nut." Uraseal, as opposed to the public, should bear the cost of its failure to seek broader protection to cover the foreseeable substitution of a yoke and keeper for a nut and bolt.

In addition, Uraseal's patent does not represent a pioneer invention which is "to be given wider ranges of equivalence than minor improvement patents." Autogiro Co. of America v. United States, 384 F.2d 391 (Ct. Cl. 1967). A pioneer invention is "a patent concerning a function never before performed, a wholly novel device, or one of such novelty and importance as to make a distinct step in the progress in the art." Boyden Power-Brake Co. v. Westinghouse, 170 U.S. 537, 569 (1898). The plaintiff admitted in its patent application that "[t]his is an old and crowded art. Small changes and new combinations make significant advances." Exhibit E at U00042 (attached to plaintiff's objection to defendant's motion for summary judgment). Since the '530 patent is not a pioneer invention, the broad protection Uraseal seeks under the doctrine of equivalents is inappropriate.

7

Furthermore, the EMC ground clamp improves upon the '530 patent, and the yoke and keeper is not simply an unimportant and insubstantial substitution for the nut and bolt. In the '530 patent, the bolt and nut perform the function of holding the wire in place by tightening the nut down on the wire by hand, and there must be sufficient clearance to allow an operator to insert his or her hand or a wrench to grasp the nut. The keeper of the EMC has a slot dimensioned to receive the blade of a screwdriver, so no clearance is required for tightening the keeper. In addition, as defendant points out in its memo:

> The legs of the yoke are constrained within the keeper in a manner that prevents separation of the thread surfaces of the yoke from the thread surface of the keeper when the ground clamp is exposed to external forces or if the keeper is exposed to excessive torque. An external force applied to the legs of the slotted bolt will cause the legs to flex towards each other, resulting in separation of the thread surface of the bolt from the thread surface of the nut.

Defendant's Memorandum at 17. Thus holding the EMC ground clamp to be outside the scope of Uraseal's patent protection would not be sanctioning a fraud on the patent. Rather, it would be encouraging the improvement of existing technology.

Given this evidence, the court concludes that the yoke and keeper are not equivalent to the nut and bolt. The yoke and keeper add improved functionality to the invention, and such improvements of prior inventions should be encouraged rather than

8

discouraged under an overbroad reading of the doctrine of equivalents. Thus Uraseal has not met its burden of proving infringement.

## Conclusion

For the foregoing reasons, defendant's motion for summary judgment must be and herewith is granted.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

February 11, 1998

cc:   Paul C. Remus, Esq.
      Richard C. Nelson, Esq.
      Guy D. Yale, Esq.

9